## Elizabeth R. Dunham v. Ransom W. Dunham.

57  475
162s 589

1. JUDGMENTS—*Requisites of Validity.*—Two things are necessary to the validity of a judgment: (1) the court must have jurisdiction over the subject-matter concerning which it adjudicates, and (2) it must have jurisdiction over the particular thing or person concerning which or on whom it passes judgment.

# 476 APPELLATE COURTS OF ILLINOIS.

2. COURTS—*Of Other States—Jurisdiction Over Citizens of Illinois—* —*Judgments in Personam.*—The Circuit Court of Lincoln County, South Dakota, can not render a judgment *in personam*, conclusive against a citizen of Illinois, over whom it acquires no jurisdiction other than such as it obtains by the publication of a notice for him to appear, although the laws of that State provide that personal service may be so had by publication, and personal judgment rendered.

3. SAME—*Of Other States—Judgment in Rem.*—As to interests in mere things lying within its territorial jurisdiction, a court of superior and general jurisdiction may conclude all persons, present and absent, although notice is given by publication and personal service is not had.

4. MARRIAGE—*A Condition or Status.*—The marriage state is a condition or status, of the individual, depending for its existence upon the laws of the country in which the individual is domiciled.

5. SAME—*Not Dissoluble at the Will of the Parties.*—Marriage, although a civil contract, is not like other contracts, dissoluble at the will of the parties.

6. STATUS OF INDIVIDUALS—*Each State Determines—Marriage.*— Each sovereignty determines for itself what the condition or status of individuals shall be so long as they are domiciled within the jurisdiction of its laws. The status of an individual as to marriage may be different in the various sovereignties in which he resides or travels.

7. SAME—*Marriage Depends upon the Laws of the Domicile.*—A person may, in Dakota, be regarded and treated, by the laws of that State, as a single person, free to marry, and at the same time, while in Illinois, regarded by the law as a married person. Marriage is a state which people can enter into only in accordance with the laws of the State where it takes place, but whether in another sovereignty to which they may remove they will be recognized as husband and wife, depends upon the law of such sovereignty.

8. CONSTITUTIONAL LAW—*Credit to be Given to the Laws of Other States.*—The Constitution of the United States, requiring that full faith and credit shall be given to the public acts, records and judicial proceedings of any other State, does not require that the State of Illinois shall, within its territory, enforce the laws of South Dakota. The constitution gives to each State the power to determine the legal status of those who come within its borders so long as they remain there.

9. DECREES—*Of the Courts of Other States—How Far Binding.*— Whenever a court of equity is called upon to carry a decree into execution it has full power to look into the case and see whether the decree is equitable and just, and if it is not, it will refuse to enforce it.

10. DIVORCES—*Of Foreign States—Legality in Illinois.*—When a discontented married person goes to another State and procures in its courts, upon service by publication, a divorce from a conjugal partner never within the jurisdiction of the court, whether, in the State left, such person will be regarded as single and unmarried, depends upon its law and public policy.

Dunham v. Dunham.

11. SAME—*The Public an Interested Party.*—In proceedings for divorce the public is an interested party and the proceedings must be such and for such cause as the law approves. It is not enough that the parties desire to be divorced.

12. SAME—*Proceedings in Other States—Residence—Frauds.*—In proceedings in the courts of South Dakota for a divorce, it is necessary in order that no fraud should be committed upon the public that the complainant should have been in good faith a resident of the State for at least six months next preceding the commencement of the action, and if not such a resident at the time of the commencement of the suit, or if the suit was instituted for the purpose of evading a trial in a court of another State, or of ousting such court of its jurisdiction, such proceeding is a fraud upon the public.

**Memorandum.**—Proceedings for divorce. In the Circuit Court of Cook County; the Hon. SAMUEL P. McCONNELL, Judge, presiding. Hearing and decree for complainant; appeal by defendant. Heard in this court at the October term, 1894, and affirmed. Opinion filed February 12, 1895.

## STATEMENT OF THE CASE.

This appeal is brought to reverse a decree entered by the Circuit Court of Cook County, granting to appellee a divorce from appellant. The facts disclosed upon the record may be thus outlined:

On December 24, 1889, the parties were married at the city of Philadelphia, in the State of Pennsylvania.

A few days after this marriage, the parties took up their residence in the city of Chicago, in the State of Illinois, where they continued to live until December 31, 1892.

On March 25, A. D. 1893, appellee filed in the Circuit Court of Cook County, Illinois, a bill in equity, stating therein his residence in that county for more than two years before that time; his citizenship in this State; his intermarriage with appellant on December 24, 1889; their residence together as man and wife in Chicago until December 31, 1893; charging adultery between appellant and Arthur W. Allyn in Chicago, on February 23, 1893, and at other former times; alleging appellee's ownership at the time of the marriage of certain real estate situate in Cook County; the voluntary conveyance of these premises by appellee to appellant for a homestead on June 15, 1891; the

constant use of the conveyed premises by appellant and appellee as a joint homestead after the marriage, and until December 31, 1892, and such use by appellee since that time; uncaused and voluntary abandonment of appellee and her home by appellant on that date, and subsequent pretended residence by her in South Dakota; charging, also, appellant with the clandestine disposition of horses and a carriage belonging to appellee, and wrongful claim to a portion of the household furniture belonging to appellee; that appellant secretly and without authority leased the homestead and all furniture therein, with the intention to remove appellee from the possession of said premises and deprive him of his homestead rights therein; and also charged the assignment to appellant of certain insurance policies on appellee's life and payment of dues thereon by appellee; the leaving with appellee by appellant of her child by a former husband; a conspiracy between appellant and her paramour resulting in appellant's secret journey with him to Canton and Sioux Falls, South Dakota, for the purpose of obtaining a fictitious residence there, and there to secure, or attempt to secure, a divorce from appellee; appellant's immediate preparation of a complaint for divorce, containing false charges against appellee, and appellant's pretended residence in South Dakota and frequent visits to Chicago; an alleged trip to the east by appellant concealing her real journey with Allyn to the west and repeated acts of adultery with Allyn during the elopement.

It is then stated that the homestead was conveyed and the policies of insurance transferred to appellant, under the belief on the part of appellee, that appellant was and would continue a faithful wife; but that appellant had refused to live with appellee as his wife; had abandoned him and committed adultery; and the prayer is: (1) for a divorce from the bonds of matrimony; (2) for an injunction against defendant to prevent the disposition by her of the homestead or furniture; (3) for the cancellation of the deed of conveyance of the real estate to appellant; (4) for the re-transfer to appellee of the life insurance policies; (5)

the custody of the child of appellant; (6), for restraining appellant from mortgaging, incumbering, selling, conveying or leasing sub-lot 3 in the city of Chicago and the furniture of complainant situated thereon; in any way interfering with appellee's possession of the homestead premises, and for general relief.

On the day that appellee filed his bill, he also filed the following affidavit: That "defendant, Elizabeth R. Dunham, pretends to reside and hath gone out of this State, and on due inquiry can not be found within the State, and affiant further states that the place where such defendant is now, is Sioux Falls, Minnehaha county, State of South Dakota."

Subscribed and sworn to March 25, 1893, by Ransom W. Dunham.

On April 25, 1893, the summons in said cause was personally served upon appellant, at the city of Chicago.

Thereafter, on May 3, 1893, appellant appeared and filed her answer in said cause.

The answer denies the allegations of adultery, and states that appellee's conduct toward, and treatment of appellant were such as to render it destructive of her happiness, and dangerous to her health to continue to live with him as his wife; that in September, 1892, impelled by these causes, appellant ceased to live with appellee as his wife, and on December 31, 1892, she removed to and took up her residence in the State of South Dakota.

On July 8, 1893, in the Circuit Court of Lincoln County, in the State of South Dakota, appellant filed a complaint for divorce against appellee. The complaint alleged that, at the time of filing thereof, appellant was, and for more than six months prior thereto had been, a *bona fide* resident of the State of South Dakota; and that on December 24, 1889, she was married to appellee. As grounds for divorce, the complaint charges cruelty, failure to support and adultery.

Upon the filing of the complaint, a summons was issued to the sheriff of Lincoln county, South Dakota, who returned the same "not served," and in his return certified

that, after diligent search and inquiry, he had been unable to find the defendant, but had learned upon inquiry that said defendant resided in the city of Chicago, in the State of Illinois.

Thereupon appellant filed her affidavit in said cause, stating, first, that she was the plaintiff therein; second, that the action was for divorce; third, that the complaint therein was filed in the office of the clerk of the Circuit Court of Lincoln County, in the State of South Dakota, on July 8, 1893; fourth, that on said day she caused a summons to be issued in said cause, and delivered to the sheriff of said county for service, and that said sheriff had returned said summons "not served," for the reason that said defendant could not, after due and diligent search, be found in said county; fifth, that said defendant can not be found in said State, and the summons can not be served upon him therein, for the reason that said defendant is not in said State, but resides at number 3870 Lake avenue, in the city of Chicago, State of Illinois.

Upon the above affidavit being filed, an order of publication was entered in said cause, directing the summons to be published for six consecutive weeks, in the Sioux Valley News, a weekly newspaper published at Canton, in said county, and that a copy of the complaint, together with copies of the summons and order of publication, be forthwith deposited in the postoffice, addressed to said defendant, at number 3870 Lake avenue, Chicago, Illinois, with all postage paid thereon.

Service of the above mentioned complaint, summons and order was made upon the defendant at Chicago, by delivering to him copies thereof, on July 10, 1893.

On September 19, 1893, appellee moved the Circuit Court of Cook County to enter an order restraining appellant from prosecuting the action begun by her in the Circuit Court of Lincoln County, South Dakota. In support of said motion, appellee filed his affidavit, stating that on or about July 8, 1893, and after appellant had been served with process, and filed her answer in this suit, she had instituted

a suit against appellee, in the Circuit Court of Lincoln County, in the State of South Dakota; and had caused copies of the complaint, summons and order of publication therein, to be served upon appellee by delivering the same to him at Chicago; that appellee was never served, in said suit, within the limits of South Dakota; that said suit is brought for a divorce, and that the grounds therein alleged are false; that all the matters set up in said complaint arose in Chicago, Cook county, Illinois, and are the same as a portion of the matters set up in the answer filed by appellant in this suit; that all the matters set up in said complaint can be litigated in this suit, and that it will be a great injustice to compel appellee to expend the labor, time and money necessary to defend said suit.

To the above affidavit, appellee attached as exhibit, copies of the complaint, summons and order of publication.

This motion was heard and overruled, and thereafter, on September 2, 1893, the suit of appellant against appellee, in the Circuit Court of Lincoln County, South Dakota, came on for hearing, and the court found:

1.   That the parties were married at the city of Philadelphia, in the State of Pennsylvania, on December 24, 1889.

2.   That of said marriage, there was and is now living, issue.

3.   That after said marriage, the parties resided at the city of Chicago, in the State of Illinois, until December 31, 1892.

4.   That plaintiff (appellant) now is, and for more than six months next immediately preceding the commencement of this action, has been, in good faith, a resident of the State of South Dakota.

5.   That since the marriage of plaintiff (appellant) and defendant (appellee), the defendant (appellee) has been guilty of extreme cruelty toward the plaintiff (appellant) in this, that the defendant (appellee), at all times since their marriage, and during their cohabitation as husband and wife, has been unwilling that plaintiff (appellant) should bear children; and to prevent the begetting according to the

natural result of their matrimonial intercourse as husband and wife, he has required plaintiff (appellant), contrary to her will, to use dangerous means and injurious artifices and practices in and upon her person to prevent her natural conception, and when conception had taken place, to procure a miscarriage.

6. That after the parties were married, and while they lived in Chicago, defendant (appellee), with intent to cause plaintiff (appellant) to have a miscarriage, administered to her certain noxious and dangerous drugs, which caused plaintiff (appellant) to become, and for a long time to remain, violently and dangerously ill, during which illness she miscarried.

7. That during all the time plaintiff (appellant) continued to reside and cohabit with defendant (appellee), he required her to allow to be used in and upon her person various dangerous means to prevent conception, and, among others, to inject into her person large quantities of cold water immediately after intercourse, by reason of which her health was impaired and her life endangered.

8. That each and all of said preventive acts were done, and required to be done by defendant (appellee), and against the will and remonstrance of plaintiff (appellant), and that to continue to live and cohabit with the defendant (appellee) would seriously impair plaintiff's (appellant's) health and endanger her life.

9. That the allegations of the complaint herein are true.

10. That plaintiff, Elizabeth R. Dunham (appellant), is entitled to a decree of the court, dissolving the bonds of matrimony heretofore and now existing between her and defendant, Ransom W. Dunham (appellee), and permitting her to resume her former name, Elizabeth R. Wallace.

Upon the foregoing findings the court entered the following decree:

"Elizabeth R. Dunham, plaintiff, v. Ransom W. Dunham, defendant.

The above entitled action having been duly tried by the court, without a reference, at its chambers in the city of

Canton, in the county of Lincoln, in the Second Judicial Circuit of the State of South Dakota, on the twenty-first day of September, A. D. 1893, Arthur R. Brown appearing as counsel for the plaintiff, Elizabeth R. Dunham, there being no appearance for the defendant, Ransom W. Dunham, and it duly appearing to the court that on the 8th day of July, A. D. 1893, the complaint herein was duly filed in the office of the clerk of the Circuit Court of the Second Judicial Circuit of the State of South Dakota, in and for said Lincoln county, and that on said day an order of this court for the service of the summons in this action, upon the defendants herein, by the publication thereof, was duly made and entered, and that thereafter, on the tenth day of July, A. D. 1893, in pursuance of said order, and pursuant to the statute in such case made and provided, the summons and complaint in this action, together with a copy of said order of publication was duly and personally served upon Ransom W. Dunham, the defendant above named, at the city of Chicago, in the State of Illinois, and it further duly appearing to the court that the time for answering herein expired on the twentieth day of September, A. D. 1893, and that no answer or demurrer to the complaint herein has been served, and that the defendant has not in any manner appeared in this action, but herein makes default, and the said court having on the twenty-first day of September, A. D. 1893, duly made and filed its findings of fact and conclusions of law, and its decision in said cause, in favor of the plaintiff and against the said defendant, which said findings and decisions thereon are hereby referred to and made a part of this decree.

Now, upon advisement and upon motion of Arthur R. Brown, attorney for the said plaintiff, and pursuant to the said findings and decision and as therein directed, it is hereby adjudged and decreed, that the bonds of matrimony heretofore and now existing between the plaintiff, Elizabeth R. Dunham, and the said defendant, Ransom W. Dunham, be, and they are hereby dissolved, and the said parties and each of them are hereby divorced from each other and absolved

and freed from all obligations in respect to their said marriage, and the said Elizabeth R. Dunham is hereby authorized to resume the name of Elizabeth R. Wallace, her former name."

After the above decree was rendered by the Circuit Court of Lincoln County, in the State of South Dakota, appellant, upon leave of court, filed in the suit brought by appellee against her, in the Circuit Court of Cook County, Illinois, a cross-bill, wherein she alleged that, on March 25, 1893, appellee filed in said court a bill of complaint, wherein he prayed a divorce from appellant, and that certain conveyances and transfers of property, from him to her, be canceled and set aside; that on May 3, 1893, appellant, having been served with summons, appeared and answered said bill; that on the filing of said bill, an injunction was therein issued, enjoining appellant from asserting ownership over, and from transferring or disposing of, certain property described in said bill; that thereafter, upon full hearing, said injunction was dissolved.

The cross-bill further alleges that, for more than six months next preceding the 8th day of July, 1893, appellant had been a citizen and resident of the State of South Dakota; that appellant and appellee were married on the 24th day of December, A. D. 1889, and that from said date until the 21st day of September, 1893, they continued to be husband and wife; that on or about September 25, 1892, because of the cruel, brutal and inhuman treatment inflicted upon her by appellee, and without any fault on her part, appellant ceased to live and cohabit with appellee, and since said date she has not lived and cohabited with him.

After stating in detail the particular acts of cruelty, the cross-bill further alleges that, at the time appellant was compelled to, and did, cease to live with appellee, she had no home to go to, and no place wherein to live, except Dakota, where she had a house, which she had inherited from her former husband; that on December 31, 1892, appellant went to the State of South Dakota for the purpose and with the intention of taking up her residence in said State, and that since

said date appellant has resided, and now resides, in the county of Lincoln in said State. That for more than three years last past, although having the ability to provide for and support appellant, appellee has willfully neglected to provide her with the necessaries of life. That at divers times, between November 14, 1892, and the latter part of December, 1892, appellee committed adultery with some woman or women, whose name or names are to appellant unknown; that such acts of adultery were committed in the city of Chicago, but that appellant can not state the exact time or places. That at divers times, between January, 1893, and March 25, 1893, appellee committed adultery with some woman or women, whose name or names are to appellant unknown; that such acts of adultery were committed at the city of Chicago, but that the exact time and places are unknown to appellant. That all of said acts of adultery were committed at the city of Chicago, but that the exact times and places are unknown to appellant. That all of said acts of adultery were committed without the consent, connivance, privity or procurement of appellant, and that appellant has not cohabited with appellee since she learned of said acts. That of the marriage between appellant and appellee, there was no living issue, and that prior to said marriage appellant's name was Elizabeth R. Wallace.

The cross-bill further alleges that, on the 8th day of July, 1893, appellant was, and for more than six months prior thereto had been, a resident of the State of South Dakota; that on that date, in the Circuit Court of Lincoln County, in said State, appellant commenced an action for divorce against appellee; that said Circuit Court of Lincoln County was then, and has ever since continued to be, a court of record, with general law and chancery jurisdiction, and with full power to hear and determine a claim for divorce; that on said 8th day of July, 1893, appellant filed her complaint in said case, setting up complete and sufficient grounds for divorce under the laws of said State, and thereupon a summons was duly issued in said cause, addressed to appellee, and requiring him to answer said complaint within thirty

days after the service thereof upon him; that on said day, said summons was delivered to the sheriff of said county, who thereafter returned the same into said court, and thereon certified that said appellee could not, after due diligence and inquiry, be found in said county, but that he had learned upon inquiry that appellee resided in the city of Chicago, in the State of Illinois; that said complaint was filed and said summons was issued and returned in accordance with the statutes then in force in said State of South Dakota; that upon the return of said summons, appellant filed an affidavit, stating that such action was brought for divorce; that the complaint therein was duly filed in the office of the clerk of said court, on the 8th day of July, 1893, and that the allegations therein contained were true; that upon the filing of said complaint, a summons was duly issued, directed to appellee, and placed in the hands of the sheriff of said Lincoln county, to be served as the law directs. That thereafter said sheriff returned said summons, and thereon certified that, after diligent search and inquiry, he had been unable to find appellee in said county, but had ascertained that he resided in the city of Chicago, in the State of Illinois; that by said affidavit it was further shown that said appellee resided at number 3870 Lake avenue, in the city of Chicago and State of Illinois.

The cross-bill further alleged that, upon the filing of the above affidavit, an order of publication was entered by said court, in said cause, ordering and directing that the summons in said action, in accordance with the statutes, be published for six consecutive weeks in the Sioux Valley News, a weekly newspaper published at Canton, in said county of Lincoln and State of South Dakota, and that a copy of the complaint in said cause, together with a copy of the summons and order of publication, be deposited in the post office, with the requisite postage prepaid, and addressed to appellee at No. 3870 Lake avenue, Chicago, Illinois.

That thereafter, on the 10th day of July, 1893, pursuant to the statutes of South Dakota in such cases made and provided, that said complaint, together with a copy of the sum-

mons and order of publication, was served upon appellee by delivering the same to him at Chicago, in the State of Illinois.

That on September 19, 1893, after said complaint, summons, and order of publication had been served on appellee, he moved the court to grant an order in this cause restraining appellant from prosecuting her said suit in the Circuit Court of Lincoln County, South Dakota; and in support of said motion, appellee filed an affidavit, of which he made said complaint, summons, and order of publication a part, and in which he expressly admitted that said papers were served upon him at Chicago, which motion and affidavit are, by express reference, made a part of said cross-bill, and attached thereto as "Exhibit A."

The cross-bill further states that, on September 19, 1893, the motion of appellee for an order restraining appellant from prosecuting her said suit for divorce in the Circuit Court of Lincoln County, South Dakota, came on to be heard, and was denied; that thereafter, on September 21, 1893, said suit, brought by appellant, in the Circuit Court of Lincoln County, South Dakota, came on for hearing, and said court, having heard the evidence, entered a decree, granting to appellant a divorce from appellee, absolving each of the parties from the bonds of matrimony then and theretofore existing between them, and authorizing appellant to resume her former name, Elizabeth R. Wallace; that a copy of said decree is, by express reference, made a part of the cross-bill, and attached thereto as "Exhibit B."

It is further alleged in the cross-bill, that at the time the said suit in South Dakota was commenced, and at the time the decree therein was rendered, the statutes of South Dakota provided that marriage is dissolved, first, by the death of one of the parties; second, by the judgment of a court of competent jurisdiction decreeing a divorce of the parties; that the effect of a judgment, decreeing a divorce, is to restore the parties to the state of unmarried persons; that among other causes in said statutes mentioned, it is provided that a divorce may be decreed for extreme cruelty,

and that by said statutes, extreme cruelty is defined as " the infliction of grievous bodily injury or grievous mental suffering upon the other by one party to the marriage." That by the statute of said State of South Dakota it was also provided that where the person on whom service of summons is to be made, can not, after due diligence, be found within the territory, and that fact appears by affidavit to the satisfaction of the court or judge thereof, and it also appears that a cause of action exists against the defendant upon whom service is to be made, the court or judge may grant an order of publication in certain cases enumerated in said statute, among which are actions for divorce; that, in the statute regulating service of publication in divorce cases, it is provided that when publication is ordered, personal service of a copy of the summons and complaint out of the territory is equivalent to publication and deposit in the post office; that said statute also provided that a divorce can not be granted unless the plaintiff has been a *bona fide* resident of the State of Dakota for at least six months prior to the commencement of the action therefor.

The cross-bill further alleges that the said decree rendered by the Circuit Court of Lincoln County, in the State of South Dakota, remains in full force and effect, unreversed and not appealed from, and prays that said decree be given, in this action, the same force and effect which it has in the State where it was rendered, and that it be held to be a complete bar to the further maintenance of this suit.

Upon the above cross-bill being filed, appellee filed thereto a demurrer, which was both general and special. The special grounds of the demurrer were :

1st.   That the matters set forth in the cross-bill were not germane to the subject-matter of the original bill.

2d.   That the matters set forth in the cross-bill are simply matters of defense.

3d.   That the cross-bill does not pray for affirmative relief against appellee.

This demurrer was, upon argument, sustained by the court, and thereafter the case coming on for final hear-

ing, the court entered a decree finding appellant guilty of adultery and granting a divorce to appellee. From that decree the cause is brought upon appeal to this court.

Appellant's Brief, Moran, Kraus & Mayer, Attorneys.

The question as to when the courts of one State will recognize and give effect to a decree of divorce granted by a court of a sister State upon publication or substituted service, is one upon which the decisions are not entirely harmonious. If the cases upon this subject be examined, however, it will be found that the want of harmony in the conclusions reached is traceable to two sources.

First.    Differences between the divorce statutes of the several states.

Second.    Differences in views entertained by the various courts as to whether the marriage relation is a contract or a status; whether a proceeding for a divorce is an action *in personam* or an action *in rem*.

The rule based upon reason and sanctioned by authority is that where the courts of a State have jurisdiction of the subject-matter and of the complainant they may pronounce a decree of divorce which will be everywhere binding and valid even though the defendant is a non-resident, is not personally served with process, and does not appear, provided the statute of that State authorize the granting of divorces upon substituted service, and the procedure marked out by such statute is pursued.

In one sense a status or condition can hardly be called a thing. It may mean an estate in the sense of the condition or relation in which a person may stand toward it. It is a condition of a person, such as being an infant, a slave, or a married man or woman, a ward or a prisoner. In the relation in which it arises, it is purely transitory, yet follows as a condition attached to the person; as, when a man and woman are married, each carries that status, so that a court having jurisdiction over one, may dissolve it as to both. It arises more commonly in suits for divorce, and it may now be said that where one of the parties becomes a resident of

the State, or is domiciled therein, he or she may apply to the court of the State having jurisdiction over that party as a citizen thereof, and the court may dissolve that relation or status, although the other spouse has never been within the jurisdiction of the State, and owes no allegiance to it. It therefore is necessarily held to be a thing, within the meaning of the law, that is attached to citizenship or a domiciled person in the State, and the jurisdiction grows out of that thing. Brown on Jurisdiction, Sec. 76.

A proceeding in divorce is in some sense and for some purposes *in personam*. But since its prime object is to dissolve the marital relation heretofore subsisting between the parties, and thereby to adjudicate upon their status, it is strictly and truly a proceeding *in rem*. Important consequences flow from this doctrine; for, first, the proceeding being *in rem* it is evident that jurisdiction of the *res* will in itself be sufficient to authorize the sentence pronounced, without personal service of process upon the defendant; and secondly, in so far as the judgment determines the status of the applicant, it is a judgment that is operative and conclusive as to all the world. Black on Judgments, Sec. 803.

In America it is generally held, and, indeed, almost universally, that as a proceeding in divorce is intended to affect the status of the parties, and is, therefore, essentially *in rem*, the judgment pronounced, whether in a foreign country or in a sister State, by a court having lawful jurisdiction of the cause, and in the absence of fraud, is valid and binding everywhere and in all subsequent controversies, provided the applicant was *bona fide* domiciled within the territorial jurisdiction of the court, although the other party, being a non-resident, was notified only by advertisement or some other species of constructive service. Black on Judgments, Secs. 822–932.

Every State or sovereignty has the right to determine the domestic relations of all persons having their domicile within its territory; and therefore, where a husband or wife is domiciled within a particular State, the courts of that State can take jurisdiction over the status, and for proper

Dunham v. Dunham.

causes act on this *rem* and dissolve the relation.    Gould v. Crow, 57 Mo. 200.

See also Ditson v. Ditson, 4 R. I. 87; Pennoyer v. Neff, 95 U. S. 714; Bish. Marr. and Div., Sec. 156; see also, Maynard v. Hull, 125 U. S. 190; In re James Estate (Cal.), 33 Pac. Rep. 1122; Thompson v. State, 28 Ala. 12; Thurston v. Thurston, 59 N. W. Rep. 1017; Cook v. Cook, 56 Wis. 195, and Wright v. Wright, 24 Mich. 180; Cox v. Cox, 19 O. St. 502, and Turner v. Turner, 44 Ala. 450; Roth v. Roth, 104 Ill. 32; Van Orsdal v. Van Orsdal, 67 Iowa 35; Smith v. Smith, 10 So. Rep. 248.

A prior judgment upon the same cause of action, sustains the plea of former recovery, although the judgment is in an action commenced subsequently to the one in which it is pleaded.    The date is of no consequence; it is the fact of an adjudication between the same parties upon the same subject-matter which gives effect to the former recovery. Herman on Estoppel and Res Judicata, Sec. 120; Duffy and Mehaffy v. Lytle, 5 Watts (Pa.) 120; Rogers v. Odell, 39 N. H. 452; Child v. Eureka Powder Wks., 45 N. H. 547.

Appellee's Brief, Geo. W. Plummer, Wharton Plummer and Reed, Brown & Allen, Attorneys.

Where married persons domiciled in one State separate, and one goes to another State, and in good faith acquires a domicile there according to the laws thereof, and there institutes proceedings authorized by its laws to annul the marriage tie, and service as authorized therein is had by publication against the non-resident, but no personal service within the jurisdiction or appearance is had, though there be actual notice of the suit, while the decree may be operative within the limits of that State, it is not binding upon the absent party who is a citizen of another jurisdiction, and will not bar proceedings by such party in the courts of his own State for a divorce.    People v. Baker, 76 N. Y. 78; O'Dea v. O'Dea, 101 N. Y. 23; Cross v. Cross, 108 N. Y. 628; Jones v. Jones, 808 N. Y. 415; De Meli v. De Meli, 120 N. Y. 485; Williams v. Williams, 130 N. Y. 193; Kerr v. Kerr, 41 N. Y.

272; Kinnier v. Kinnier, 45 N. Y. 535; Hoffman v. Hoffman, 46 N. Y. 30; Hunt v. Hunt, 72 N. Y. 217; Jackson v. Jackson, 1 John. 424; Pawling v. Bird's Executors, 13 John. 192; Borden v. Fitch, 15 John. 121; Bradshaw v. Heath, 13 Wend. 407; Vischer v. Vischer, 12 Barb. 640; McGiffert v. McGiffert, 31 Barb. 69; Lyon v. Lyon, 2 Gray 367; Hanover v. Turner, 14 Mass. 227; Barber v. Root, 10 Mass. 260; Commonwealth v. Blood, 97 Mass. 538; Harteau v. Harteau, 14 Pick. 181; People v. Dawell, 25 Mich. 247; 2 Bishop on Marriage and Divorce, Secs. 156 and 170; Prosser v. Warner, 47 Vt. 667; Arrington v. Arrington (N. C.), 9 S. E. 200; Irby v. Wilson, 1 Dev. & B. Eq. (21 N. C.) 568; Fass v. Fass, 58 N. H. 283; Norris v. Norris, 15 Atl. Rep. 19; Cheever v. Wilson, 9 Wall. 108; Green v. Green, Law Rep. (1893) Prob. 89; Turnbull v. Walker, 5 Rep. 132 (L. T. Rep., Vol. 67, 767); Flower v. Flower (N. J. E.), 7 Atl. Rep. 669; Doughty v. Doughty, 28 N. J. E. 581; Davidson v. Sharpe, 28 N. C. 14; Schonwald v. Schonwald, 55 N. C. 367; Long v. Insurance Co., 114 N. C. 465; Harris v. Harris, 20 S. E. Rep. 187; Wilson v. Seligman, 144 U. S. 41; Commonwealth v. Steiger, 12 Pa. Co. Ct. Rep. 334; In re Howe, 14 N. Y. S. 285; Davis v. Davis, 22 N. Y. S. 191.

There is no doubt that the *bona fide* residence in good faith of appellant for six months is indispensable to jurisdiction. Her marriage status was not subject to judicial consideration by the South Dakota courts until the statutory period of genuine residence there had elapsed. This jurisdictional fact can not be controverted in any attempt to enforce or rely upon that decree in this State, and if it appears untrue the decree is utterly null and void. Thompson v. Whitman, 18 Wall. 451; Knowles v. Gas Co., 19 Wall. 58; Carlton v. Bickford, 13 Gray, 591; Folger v. Columbian Ins. Co., 99 Mass. 267; Shannon v. Shannon, 4 Allen 134; Leith v. Leith, 39 N. H. 20; Hoffman v. Hoffman, 46 N. Y. 30; People v. Dawell, 25 Mich. 247; Gettys v. Gettys, 3 Lea (Tenn.) 260; Ferguson v. Crawford, 70 N. Y. 253; Sewall v. Sewall, 122 Mass. 156; Van Fassen v. State, 37 O. St. 317; Price v. Ward, 25 N. J. L. 225; Kerr v. Kerr, 41 N. Y. 272; Knowl-

Dunham v. Dunham.

ton v. Knowlton, 51 Ill. App. 71; Werner v. Werner, 30 Ill. App. 159; Thompson v. State, 28 Ala. 21; Cheeley v. Clayton, 110 U. S. 701; Smith v. Smith, 10 So. Rep. 248; Black on Judgments, Sec. 897 and note; Gregory v. Gregory (Me.), 3 Atl. Rep. 286.

The jurisdiction of a court to consider the marital condition or status is dependent upon the actual *bona fide* domicile of at least one of the parties within the State. Gregory v. Gregory, 78 Me. 187; Hoffman v. Hoffman, 46 N. Y. 30; Blain v. Blain, 45 Vt. 538; Van Fassen v. State, 37 Ohio St. 317; Gregory v. Gregory, 76 Me. 535; Sewall v. Sewall, 122 Mass. 156; Davis v. Commonwealth, 13 Bush. (Ky.) 318.

If a party goes to a jurisdiction other than that of his domicile, for the purpose of securing a divorce, and has residence there for that purpose only, such residence is not *bona fide*, and does not confer upon that State or country jurisdiction over the marriage relations, and any decree they may assume to make would be void as to the other party. Cooley on Const. Lim. *400.

A residence in a State to acquire a domicile should be *bona fide*, or a bill for divorce will be dismissed. Albee v. Albee, 141 Ill. 550.

The domicile of the husband remained unchanged, and is presumed the domicile of the wife. Smith v. Smith, 28 N. W. Rep. 296; Hunt v. Hunt, 72 N. Y. 217; Greene v. Greene, 11 Pick. 410; Hawston v. Hawston, 27 Miss. 704; Brewer v. Linnæus, 36 Me. 428.

The legal presumption also is that that domicile remains unchanged. Ferguson v. Wright, 18 S. E. Rep. 691; Am. & Eng. Enc. Law., Vol. 5, p. 971.

To effect a .change of domicile, there must be an actual abandonment of the first domicile, coupled with an intent not to return to it, and there must be a new domicile acquired by actual residence within another jurisdiction, coupled with the intention of making the last acquired residence a permanent home. Hayes v. Hayes, 74 Ill. 312; Cooper v. Beers, 143 Ill. 25; People v. Connell, 28 Ill. App. 291.

A mere residence for the purpose of obtaining a divorce is not a *bona fide* residence, such as will give a person a domicile in such State. Fosdick v. Fosdick, 23 Atl. Rep. 140; Smith v. Smith, 10 So. Rep. 248.

A person's intent is the decisive point as to domicile. State v. Palmer, 17 Atl. Rep. 977; Neff v. Beauchamp, 74 Iowa 92.

The jurisdiction of equity in matters of divorce is not an original or inherent jurisdiction. All such matters were at first in the sole control of the ecclesiastical courts. This branch of equity control is the creature of statutory enactment both here and in Dakota. And as the jurisdiction is purely statutory, and based upon certain statutory provisions as to length and kind of residence, the finding must conform exactly to said requirements. Kenyon v. Kenyon, 24 Pac. Rep. 829; Wightman v. Wightman, 4 Johns. Ch. 343; Haymond v. Haymond (Tex.) 12 S. W. Rep. 90.

A foreign divorce upon substituted service of process, though with actual notice to defendant, while it may annul the bonds of matrimony, is not a bar to proceedings by the defendant in the courts of his own State, to establish property rights. Doerr v. Forsythe, 35 N. E. Rep. 1055; Stilphen v. Stilphen, 58 Me. 508; Wright v. Wright, 24 Mich. 181; Cook v. Cook, 56 Wis. 195; Cox v. Cox, 19 Ohio St. 502; McCallum v. McCallum, 59 N. W. Rep. 1019; Turner v. Turner, 44 Ala. 450.

When a court competent to adjudicate upon the subject-matter of the litigation obtains jurisdiction over parties by the service of process within the territorial limits of its extent, and especially after the appearance of a defendant and answer and issue joined, such court alone has the power to adjudge upon the questions sought to be litigated in the suit, and no other court can deprive it of that power. Central Nat. Bank v. Hagard, 49 Fed. Rep. 293; McKenn v. Voorhies, 7 Cranch 279; Riggs v. Johnson Co., 6 Wall. 166; Mayor v. Lord, 9 Wall. 409; Supervisors v. Durant, 9 Wall. 415; Allen v. Supervisors, 11 Wall. 136; Covell v. Heyman, 111 U. S. 183; Fox v. Railroad Co., 2 App. (U. S.) 151; Rail-

Dunham v. Dunham.

road Co. v. Gomila, 132 U. S. 478; Plume & Atwood v. Caldwell, 136 Ill. 163; Howell v. Moore, 127 Ill. 79; East Tenn. v. Atlanta, 49 Fed. 608; Gindele v. Corrigan, 129 Ill. 586; Cole v. Oil Well Co., 57 F. R. 534; Bishop on M. & D., Vol. I, Sec. 1448, 1460, 1461; Penn. v. Bridge Co., 18 How. 421; Bond v. Monroe, 28 Ga. 597; Bolt v. Horn, 26 Ind. 194; Griffin v. Cunningham, 20 Wall. 31; McDaniel v. Correll, 19 Ill. 226; 68 Am. D. 587; McGuire v. McGuire, 7 Dana 181; Gaines v. Gaines, 9 B. Mon. 295; 48 Am. D. 425; Richardson v. Wilson, 8 Yerger 67; Mason v. Piggott, 11 Ill. 85; 1 Bish. on M., Sec. 634; Jones v. Jones, 36 Hun 414; Johnson v. Johnson, 67 How. Pr. 144; Webster v. Webster, 54 Ia. 153; Haines v. Carpenter, 1 Woods 598; Upton v. N. J. I. R. R., 25 N. J. E. 372; Bailey v. Schraeder, 34 Ind. 260; Raisler v. Oliver, 97 Ala. 710; Central Tr. Co. v. S. At., 51 Fed. Rep. 3; Mack v. Winslow, 59 Fed. Rep. 316; Blydenstein v. N. Y., 59 Fed. Rep. 12; Lamer v. Gallalas, 13 La. Ann. 175; Berrett v. Oliver, 7 Gill & J. 191; Burch v. Newberry, Seld. 374; McCabe v. Emerson, 18 Pa. 111.

Mr. Presiding Justice Waterman delivered the opinion of the Court.

If the matters and things set up in the cross-bill of appellant constituted a defense to the suit against her, occurring as they did after the filing of her answer, they were properly brought before the court by such bill. Ferris v. McClune, 36 Ill. 77; Jenkins v. International Bank, 111 Ill. 462; Story's Eq. Pleadings, Sec. 393; Daniell's Ch. Pr., Vol. 1, pp. 606–7, 5th Ed.

The Constitution of the United States, Sec. 1, Art. 4, commands that, "full faith and effect shall be given, in each State, to the public acts, records and judicial proceedings of every other State."

In so far, therefore, as the Circuit Court of Lincoln County, in the State of South Dakota, has jurisdiction to proceed and adjudicate as it did, full faith and credit must be given to its judgment.

Two things are necessary to the validity of the judgment of a court:

First. It must have jurisdiction over the general subject-matter concerning which it adjudicates.

A justice of the peace can not grant a divorce because he has no jurisdiction in the matter of divorces.

Second. The court must have jurisdiction over the particular thing or person concerning which or whom it passes judgment.

The Circuit Court of Lincoln County, South Dakota, could not, by a proceeding *in rem*, disturb the title to the Sherman House in Chicago; nor could it render a judgment *in per sonam* conclusive against a citizen of Illinois, over whom it had acquired no jurisdiction other than such as it obtained by the publication of a notice to him to appear; and this, although the laws of South Dakota provided that personal service might be so had, and personal judgment rendered against a party summoned only by notice inserted in a Dakota newspaper. Cooley's Constitutional Limitations, 498

As to interests in mere things lying within its territorial jurisdiction, a court of superior and general jurisdiction may conclude all persons, present and absent, although notice is given only by publication, and personal service is had upon no one. Cooley's Constitutional Limitations, 496.

Marriage has been said to be a status, and consequently divorce, but a decree as to a status, is a proceeding *in rem*. Thurston v. Thurston, 59 N. W. Rep. 1017; Gould v. Crow, 57 Mo. 200; Black on Judgments, Sec. 803; Brown on Jurisdiction, Sec. 76; see also, Bishop on Marriage and Divorce, Vol. 2, Secs. 132–142 and 147.

The marriage state is a condition; a status; so, also, is minority, citizenship, freedom, bondage. These are each conditions of the individual, depending for their existence upon the laws of the territory in which the individual is domiciled.

Anterior to 1860, the man who was in America a slave, when he entered the sovereignty of England became, there, a free man. A person might be a minor in South Dakota, yet of full age in Illinois. In England a woman is a minor until she is twenty-one years of age, while in Illinois, she attains her majority at eighteen.

Dunham v. Dunham.

Each sovereignty determines for itself what the condition —status—of individuals shall be, so long as they are domiciled within the jurisdiction of its laws.    Strader v. Graham, 10 How. (U. S.) 82, 93; Cheever v. Wilson, 9 Wal. 108.

The condition of marriage is *sui generis;* although a civil contract, it is not like other contracts, dissoluble at the will of the parties.

In Illinois, marriage is a partnership in which there can be but two members.    In Turkey a man may have at one and the same time four wives; his married status would there be that of the husband of four women, but if with one or all he came here, his status, while here, would be nothing of the kind.

If he died in Illinois our law would not recognize the right of four women to dower in his real property, here situated, nor the claim of four widows to administer upon his estate.

The status of an individual as to marriage, as well as freedom, may be very different in the various sovereignties in which he travels or dwells.    Strader v. Graham, 10 How. (U. S.) 82–93.

There is, therefore, nothing anomalous, except as the laws respecting marriage and divorce are anomalous, in appellant being, when in Dakota, regarded and treated by the laws thereof as a single woman, free to marry Mr. Allyn, and at the same time being, while in Illinois, regarded by our law as the wife of appellee; for marriage is a state which people not alone, can enter into only in accordance with the *lex loci contractu;* but whether, in a new sovereignty to which they may go, they will be recognized as husband and wife, depends upon the law—the public policy—of such sovereignty.    Vol. 1, Bishop on Marriage and Divorce, Sec. 140, 141, 142, note 3.

Had Brigham Young, when under the laws of Utah, united in wedlock to his seventeenth wife, brought his new bride here, neither the public opinion, law, nor policy of this State would have recognized them as " one flesh."

So, too, when a dissatisfied husband or wife, flying to the

uttermost part of the earth or the republic, procures there, upon service by publication only, a divorce from a conjugal partner never within a thousand miles of the sovereign State under whose authority the decree was granted, whether in the State where the "defendant" has always dwelt the divorcee thus made will be regarded as a single and marriageable person, will depend upon its law and public polity.

It is undoubtedly true, as Bishop, in his work on Marriage and Divorce, Vol. 2, Sec. 156, observes, that neither of the dissevered blades of what was a pair of scissors is a "scissor." But a pair of scissors is not a thing which can be in two places at the same time, the manufacture and dissolution of which is regulated by law; whereas, marriage, in its legal aspect, in which alone we are called upon to consider it, is a creation of the law, entered into and dissolved only as permitted by the law, whose courts ofttimes refuse to sever the relation, even at the prayer of each of the bounden parties.

If a proceeding for divorce is an action *in rem*, only, it is a little difficult to perceive how the court of a sovereignty, within whose domain one of the married has never been or appeared, is to deal with the entire *rem*.

The condition of marriage is a status, and therefore a thing; but the condition appertains to two, and exists in a status, wherever each is. Proceedings *in rem* dispose only of the *rem* within the jurisdiction of the court. A suit for divorce is like marriage, *sui generis;* it is to effect a status, and also personal rights and obligations.

A court of equity acts *in personam*. Penn v. Lord Baltimore, 1 Ves. Sen. 447.

In all suits in equity the primary decree is *in personam* and not *in rem*. Wadhams v. Gay, 73 Ill. 415–429.

The Constitution of the United States, requiring that full faith and credit shall be given to the public acts, records and judicial proceedings of every other State, does not command that Illinois shall, within its territory, enforce the laws of South Dakota. The same constitution gives to each State the power to determine the merely legal status of

those who come within its border, so long as they remain there. The relation of mother and child exists from a law of nature; the relation of guardian and ward, heir and devisee, husband and wife, is determined by human law.

Had Utah, with her system of polygamy, been admitted as one of the States of the Union, and each of the seventeen wives of Brigham Young had there, by judicial proceedings or solemn act of the legislature, been pronounced each to be his lawful wife, if all came here, the courts of this State would not be bound under the constitution to here recognize the seventeen women as lawful wives of one man; while if the question here arose as to what was the condition of those eighteen persons while dwelling in Utah, the judgment would be a husband with seventeen wives.

What is here said is as to the obligation of one State to recognize the relation of husband and wife, persons divorced and marriageable, as determined in another State by proceedings in accordance with its laws. A few of the many authorities in support of what has been said are: Jones v. Jones, 108 N. Y. 415; Doughty v. Doughty, 28 N. J. Equity, 585; Flower v. Flower, 7 Atl. Rep. 669; Harris v. Harris, 20 S. E. Rep. 137; Pennoyer v. Neff, 95 U. S. 714; Simonds v. Allen, 33 Ill. App. 514; Jackson v. Jackson, 1 Johnson 424; Kerr v. Kerr, 41 N. Y. 272.

What the policy of, and rule in Illinois is, as to divorces obtained upon service by publication in other States, is another matter.

There is much force in what is said, that as the service upon appellee, in the proceeding had in Dakota, was such as the law of this State prescribes may be made and shall be sufficient to authorize in our courts the granting of divorces, it must here be recognized as sufficient. The question here in this suit presented is not so much as to the character of the service upon appellee as it is as to the alleged fraudulent character of the proceeding in South Dakota.

It is a rule of law that fraud vitiates all acts.

Whenever a court of equity is asked to carry a decree

into execution, it has full power to look into the case and see whether the decree is equitable and just, and if it is not, it will refuse to enforce it. Story's Eq. Pleadings, Sec. 43, note a, and Sec. 641; Wadhams v. Gay, 73 Ill. 415–431; Hamilton v. Houghton, 2 Bligh, 169.

In the present case, while appellant's cross-bill is introduced as a defense, yet by it she sought, not merely to interpose the decree she had obtained as a bar to the rendering to appellee of any decree for divorce, but also "as and for a complete bar to the further maintenance of this suit by said complainant." Now, this suit is not merely for a divorce; it is also for the cancellation of the deed of conveyance of certain real estate to appellee, for the re-transfer to appellee of certain life insurance policies, and other matters, not mentioned in the decree or proceedings had in South Dakota.

In proceedings for divorce the public is an interested party; the proceeding must be such, and for such cause, as the law approves; it is not enough that the husband and wife desire to be divorced. Bishop on Marriage and Divorce, Sec. 229 b; 16 Maine, 481; Whittington v. Whittington, 2 Dev. & Bat. (N. C.) 54, 76.

In the proceeding in South Dakota it was necessary, in order that no fraud should be committed upon the public, that appellant should have been in good faith a *bona fide* resident of the State for at least six months next preceding the commencement of her action.

The record of the proceedings in which her decree was obtained failed to show that at any time the court was informed that March 25, 1893, in Cook county, in the State of Illinois, in the city which had been the only home of appellant and appellee during their married life, a bill for divorce from her was filed by the afterward defendant, to the proceeding by her brought in South Dakota; that on April 25, 1893, personal service of summons in said suit was had upon appellant in said Cook county; that on May 3, 1893, she filed her answer in said cause, and that said cause was pending and undetermined, when, on July 8, 1893, she filed, in South

Dakota, her bill, and on the 21st day of September, 1893, obtained her decree. Nor does it appear that the court in which she obtained her decree was informed that when a resident of Chicago, she had, in October or November, 1892, commenced a correspondence with lawyers in South Dakota as to the grounds upon which she could there obtain a divorce, and that she had induced the co-respondent to so write, or that the court was informed as to other matters tending to show that she went to South Dakota solely for the purpose of there obtaining a divorce. What the Circuit Court of Lincoln County, South Dakota, would have done had it been informed as to these things, can not be known; that the proceeding in South Dakota was a fraud upon the public, there can be no doubt; that it was there instituted for the purpose of evading a trial in the forum in which she had appeared and answered, and for the purpose of ousting the Circuit Court of Cook County of its jurisdiction to hear and determine the matters which by the pleadings of appellant and appellee had been committed to it, plainly appears. Such conduct is not to be encouraged. Hutchings v. Hutchings, 41 Ill. App. 82; Albee v. Albee, 43 Ill. App. 370; Mail v. Maxwell, 107 Ill. 554–561.

For fraud in making jurisdiction to appear, a divorce will be set aside. Caswell v. Caswell, 120 Ill. 377; Edson v. Edson, 120 Mass. 590; Bishop on Marriage and Divorce, Vol. 2, Sec. 144; Scanlan v. Scanlan, 41 Ill. App. 449.

Whether the court below ought to have sustained the demurrer to the bill of appellant is now of little consequence; she had, upon the hearing, the full benefit of her answer and of such bill.

As to the main issue of fact involved in the case we see no sufficient reason for reversing the conclusion of the chancellor.

It is suggested that the decree in this case fastens an unjust stain upon appellee. It is not likely that many of the public, or the friends of either of the parties, will, in their judgment of the conduct of appellant or appellee, be controlled by the decree in this cause rendered. Appellant has,

without resistance, succeeded in having placed upon record in the Circuit Court of Lincoln County, in the State of South Dakota, a decree finding appellee guilty, not only of adultery, but of many other most heinous offenses. All the allegations of her petition are there found to be true.

The decree in this cause does not remove that stain, if such it be, nor would a reversal of the decree of the court below restore to appellant the good name and fair fame she once enjoyed. Each person can establish his own character. Reputation is ofttimes beyond the control of either courts or self.

Appellant desired to be divorced from appellee, free to marry whom she would; by the decree of two courts in two States she has been so divorced. The decree of the court below deals with matters of property, and it is in respect to these that it can be said to, in any considerable degree, affect unfavorably appellant's rights.

We think it such as the court should have made, and it is affirmed.