MALK BRUN, SR., APPELLEE, V. CATHERINE BRUN, APPEL-
LANT.

FILED MAY 21, 1902. No. 11,439.

Commissioner's opinion, Department No. 1.

1. **Husband: Divorce: Deed to Wife: Consideration: Inability
   to Read or Write English: Option of Wife to Admit or Ex-
   clude Husband.** A husband against whom divorce proceedings
   had been instituted conveyed a valuable farm upon which the
   family resided to the wife, relying upon representations that
   the consideration for the deed was to be a home with his wife,
   permanent reconciliation, and a life annuity of $200. The hus-
   band could neither read nor write the English language. The
   deed as finally executed gave the wife the option of receiving
   the husband into the home, or excluding him upon the payment
   of the $200 annuity. *Held*, that the deed could not be upheld.

2. **Public Policy: Deed: Husband and Wife: Indefinite Cohabita-
   tion.** A deed from a husband to wife conveying the farm upon
   which they both reside, the consideration being a home for the
   husband and cohabitation for an indefinite period, or exclusion
   of the husband from the home, at the will of the wife, upon the
   payment of a $200 annuity for life, is opposed to sound prin-
   ciples of public policy, as being a contract calculated to bring
   about a separation which has not yet taken place.

3. **Evidence.** Evidence examined, and found to sustain the findings
   and judgment of the trial court.

APPEAL from the district court for Cuming county.
Heard below before EVANS, J. *Affirmed.*

*Thomas M. Franse,* for appellant:

A deed from a husband directly to his wife, may be
sustained on equitable grounds, *i. e.*, a valuable consid-
eration. *Smith v. Dean,* 15 Nebr., 432.

When the husband and wife occupy a homestead, the
title to which is in the name of the husband, a deed of
conveyance from the husband to the wife, signed and
acknowledged by him alone, is valid. *Furrow v. Athey,*
21 Nebr., 671.

The discontinuance of a suit for a divorce and the re-
sumption of the marriage relations, are a sufficient and

valid consideration for a conveyance of lands or a promise to pay money. *Reithmaier v. Beckwith*, 35 Mich., 110.

It is no part of the court's duty nor has he the right to inquire into, or act upon, the reasons by which a husband may have been induced to make gifts to his wife. *Orr v. Orr*, 8 Bush [Ky.], 156.

The transaction was not contrary to public policy. *Adams v. Adams*, 43 Am. Rep [N. Y.], 675.

*O. C. Anderson*, also for appellant.

*Phil E. Winter, contra.*

KIRKPATRICK, C.

This is a suit brought in the district court for Cuming county on the 26th day of August, 1899, by Malk Brun, Sr., appellee, against Catherine Brun, his wife, appellant. Appellee in his petition set up two causes of action: First, alleging extreme cruelty and abandonment for three years on the part of his wife; and, second, that a certain deed which he had executed and delivered to his wife on April 1, 1895, conveying to her their homestead upon which they lived, was obtained by fraud and coercion, and that the same was contrary to public policy, and for that reason invalid; that his wife and her two grown sons had driven him from his home, and had converted over $1,700 worth of personal property belonging to him to their own use and benefit, and had ever since excluded him from the use and enjoyment of both his personal property and real estate. Appellant, Catherine Brun, answered, pleading that prior to April 1, 1895, she had commenced an action against appellee, her husband, for a divorce on the ground of extreme cruelty, and had included in that suit a cause of action asking to have the real estate upon which they lived declared to be her property and the title quieted in her, alleging that she was the real owner; that her husband and she had made a settlement of such divorce proceedings, by the terms of which the divorce proceedings were dismissed, and the deed mentioned in her husband's

petition was executed and delivered to her upon the agreement that she should either give her husband a home with her on the place, or in lieu thereof $200 per annum as long as he lived; that such settlement was freely made, upon a good and valuable consideration, and should be allowed to stand. As to the personal property, she pleaded that soon after the dismissal of the divorce proceedings, she had demanded of her husband that he deliver and turn over to her all the personal property on the place because it really belonged to her, and that in settlement and compromise of this demand, the husband had turned over the personal property to her, and that thenceforth she owned it.

It is clear that appellant's answer fails to state a defense to the cause of action set out in the petition, but as this question is nowhere presented in the briefs, and the case seems to have been tried as though the answer did state a defense, the question will not be considered. Trial was had, which on December 5, 1899, resulted in a finding and judgment for appellee, Malk Brun, Sr., granting him an absolute divorce from his wife, and canceling and setting aside the deed of conveyance to the wife as being against public policy. The decree also awarded to the wife out of the property of the husband $2,500 alimony, to be paid when she surrendered the place to him, and reserved for an accounting between the parties certain questions regarding the amount of incumbrances paid by the wife on the property, both real and personal, while in her possession, with which she was to be credited, and the husband was to be charged with $600 paid him by the wife after he was driven from the home, and with a team of horses which he had received.

No complaint is made by appellant in this court of that portion of the decree granting the divorce, or of any other portion of the decree except the cancelation of the deed of conveyance from appellee to her, and this is the only question to be considered. In order that a correct understanding of the questions involved may be had, we

will state briefly the material facts as disclosed by the record: The parties were married in August, 1882. At that time Catherine Brun was a widow, and had five small children. She was residing upon a homestead which had been the property of herself and deceased husband, which was, some time after her husband's death, sold at sheriff's sale, the purchaser being Malk Brun, Jr., a son of appellee, apparently in trust for appellee, who paid the purchase price, something over $1,200, from his own funds. The parties lived together on this land until some time in March, 1895. At that time three of the children, daughters of appellant, had married and left home, and her two sons had grown to manhood. The record discloses that some time prior to this there had been a systematic effort to drive appellee from the farm,—an effort carried on by appellant and her two sons. The sons, it seems, had taken possession of the farm, excluding appellee, at that time between sixty-five and seventy years of age, from all participation in its management. Appellant moved her bed upstairs in their house, and refused to cohabit with appellee, or in any way recognize him as her husband. Matters stood in this shape for a considerable length of time, the parties living in a state of continual hostility, and frequent quarrels occurring, when on the 8th day of March, 1895, appellant herein instituted divorce proceedings against her husband, in which she claimed to be the real owner of the land upon which they lived. After considerable difficulty, an agreement seems to have been entered into, which, as nearly as we can determine, provided that Brun should deed the farm to his wife, that she would dismiss the divorce proceedings, take appellee back to their home, and that they should cohabit together, or, in the event she did not permit him to live with her, she was to pay him $200 per annum during his life. It seems clear that Brun's understanding of the agreement was that he was to live with his wife, they were to cohabit together, she was to recognize him as her husband, and, in addition, she was to pay him $200 per annum; while

54

the wife's understanding of the agreement was that he was to live with her on the farm as long as he treated her well, during which time she was not to pay him the $200 annuity, but, in the event she could not live with him, then she was to pay him the $200 annually in lieu of a home. The deed, drawn up and executed by the husband and delivered to the wife, was drawn in accordance with the wife's understanding, and contained, in effect, the alternative provision that she was to cohabit with him as her husband, give him a home upon the place, or, in lieu thereof, pay to him $200 each year during his life, at her option. After the execution of the deed the parties returned to the farm, and in about a week thereafter the wife claimed that she owned, not only the real estate, but the personal property as well. The personal property appears to have been of the value of $1,750 or $2,000. It was not referred to in the deed, and no writing regarding it was entered into, and in the negotiations leading up to the execution of the deed, it was apparently not mentioned by any of the parties. Brun and his wife lived together till the spring of 1896, during which time there was much quarreling and disagreement, the wife claiming both real and personal property; the husband conceding the wife's ownership of the real property, but denying that she owned the personal property. About May 23, 1896, appellant's son, being then about twenty-three years of age, and physically much stronger than appellee, committed a brutal assault upon the latter, striking him and choking him into unconsciousness, when a neighbor interfered. The husband then left the place, and from time to time during the next two or three years returned and demanded to be taken back and given a home, the wife uniformly refusing, and steadfastly insisting that she would never live with him again. Appellee took from the farm a team of horses, and in the years 1897, 1898, and 1899, appellant paid him, in accordance with her version of their agreement, $200, aggregating a payment of $600.

The action of the trial court in canceling the deed of
conveyance seems to be right for at least two reasons:
First, it is apparent from the record that appellee, Malk
Brun, at the time he executed and delivered the deed in
question, was not aware of its contents. It is disclosed
that he could neither read nor write the English language,
and could but imperfectly understand it when spoken.
The deed was drawn by the county judge, who had no
understanding of German, and another officer of the
county, who had died before the commencement of this
suit, was called in at the instance of appellee to explain
the contents of the deed to the latter in German. This
was attempted to be done, but it is clear that appellee's
understanding of the deed was that it provided for a per-
manent reconciliation and continued cohabitation with
his wife, that he was to have a home with her, and that he
was to be paid annually during his lifetime $200. Instead
of carrying out this his manifest intention, the deed pro-
vided, in effect, that the wife should take the title to the
farm, and in consideration therefor either give him a
home with her as her husband, or pay him $200 annually,
this option to be exercised by her at any time she chose.
The farm at that time apparently was worth at least
$5,000, and was encumbered not to exceed $500. The per-
sonal property, it appears, was worth nearly $2,000. Ap-
pellee was at the time of this agreement nearly seventy
years old, and it is clear that in its execution the minds
of the parties never met. The agreement, supposing it
to have been understood by both parties at the time, is
unconscionable, and no court of equity ought to enforce
it. The record discloses that the rental value of the farm
was very much in excess of $200 per year, which appel-
lant, according to her claim, was to pay. It seems to be
a case where appellant and her two grown sons conspired
to exclude appellee from his own farm, and appropriate,
not only the realty, but the personal property as well,
to their own use. This court has said that a deed from
the husband to the wife, where made upon a valid con-

sideration, and where equitable grounds exist for upholding it, will be held valid. But in this case no valid ground, equitable or otherwise, seems to exist for holding the deed valid.

But the deed is invalid as against public policy. Assuming as true the contention of appellant, that the agreement actually entered into was as shown by the deed, giving her the option of receiving appellee into the home and cohabiting with him as his wife, or excluding him upon the payment of a $200 annuity, the contract is clearly bad. Under this construction of the contract it amounts to a transfer of a valuable farm to the wife, upon an alternative consideration. One alternative was that the home should continue to exist, the domestic relations should remain unimpaired, the family be held intact, and the parties to the contract should cohabit as man and wife. The other alternative was the payment of a $200 annuity to the husband by the wife, to be attended by the breaking up of the home, a severance of the conjugal relations, and the exclusion of the husband from the home. But, further, under the terms of this contract the wife was given the unqualified power to decide at any time when she should exclude the husband from the home and commence payment of the annuity. According to her own testimony, the contract was that he was to live with her as long as he treated her well. But who is to decide when his treatment has become such as both parties to the contract contemplated it must be before she should be entitled to the alternative of excluding him? The evidence unmistakably shows that she assumed that she was to make this decision.

The marriage contract is, for most purposes, in law regarded as a civil contract; but one important exception must here be remembered, namely, it is not terminable at the option of the parties, or either of them. Until terminated by the decree of a competent tribunal, both parties are under all the obligations of the contract. *Blank v. Nohl*, 112 Mo., 159. One of these obligations is

manifestly cohabitation. The contract, according to the wife's version, itself provides for cohabitation for an indefinite period. Thus it is apparent that there was no contemplation that there should be an immediate separation, but, on the contrary, a clear and undisputed understanding that continued cohabitation was feasible and within the desire of both parties. Nor was there an immediate separation. The parties lived together for a time thereafter. Society has an indubitable interest in the preservation of the home, and the perpetuity of the domestic relations. Whatever threatens the continuation of the marriage relation, when once established, is a menace against society itself. By the terms of this contract, according to the wife's contention, the perpetuity of the marriage relation was subject to the whim of the wife. She was in possession of all the real estate and strenuously asserted her ownership of all the personal property. While the rigor of the common law, which accorded to the wife a place of dependence and submission to the will of the husband, and declaring her incapable of holding property in her own right, has been greatly modified by statute, the reformation can never have contemplated a situation such as that shown in this record, where the wife, by an unconscionable contract, has become "monarch of all she surveys," claiming the undisputed right to terminate the marriage relation at will, keeping all the property, and turning the husband upon the world with a bare pittance for his subsistence. It may be admitted that where serious disputes have once arisen between husband and wife as to the ownership of the real property upon which the family resides, and from which the common livelihood is derived, the domestic happiness is in jeopardy. But a contract entered into looking to a settlement of the dispute, and contemplating a continuation of the marriage relation, can not be upheld if, instead of promoting and encouraging a restoration of domestic peace, it in fact gives to one of the parties a strong motive to encourage discord. The contract in the case at bar, as

understood by the wife, removed from her one of the most potent restraints upon her temper. The domestic happiness of few families would be secure with such a contract between husband and wife in force.

The contract was calculated to bring about a separation. It is therefore distinguished from those cases where a separation has already taken place, or where one takes place immediately in pursuance of the agreement, and the situation already developed is such that future cohabitation would likely be inconsistent with the health and happiness of the parties. In the case of *Randall v. Randall,* 37 Mich., 563, it is held that "a contract between husband and wife will not be sustained when likely to favor a separation that has not yet taken place." In the opinion in that case Chief Justice Cooley says: "It is not the policy of the law to encourage such separations, or to favor them by supporting such arrangements as are calculated to bring them about. It has accordingly been decided that articles calculated to favor a separation which has not yet taken place will not be supported. [Citing *Durant v. Titley,* 7 Price [Eng.], 577; *St. John v. St. John,* 11 Ves. Ch. [Eng.], 526; *Westmeath v. Westmeath,* Jac. [Eng.], 126.] But when a separation has actually taken place, or when it has been fully decided upon, and the articles contemplate a suitable provision for the wife and children, or an equitable and suitable division of the property, the benefits of which both have enjoyed during coverture, no principle of public policy is disturbed by them; on the contrary, if they are fair and equal, and not the result of fraud or coercion, reasons abundant may be found for supporting them." In the case of *Boland v. O'Neil,* 72 Conn., 217, it is said: "No agreement looking to a future separation of husband and wife, nor for her maintenance after such separation, will be upheld by a court of equity." In the case of *Hutton v. Hutton's Admr.,* 3 Pa. St. [3 Barr], 100, the supreme court of Pennsylvania says: "Deeds for the separation of husband and wife, are valid and effectual both in law and equity, provided their ob-

ject be actual and immediate, and not a contingent or future separation." At page 104 it is said: "It is conceded that the policy of the law does not sanction contracts by which husband and wife may be induced to separate." In the case of *Jenne v. Marble,* 37 Mich., 319, 320, it is said: "The law does not intend any rule that will tend to destroy the value and confidence of the marital relation." In *Wilde v. Wilde,* 37 Nebr., 891, this court has said that a contract between husband and wife, manifestly against public policy or sound morals, will not be enforced.

It sufficiently appears that the contract upon the terms contended for by the wife can not be upheld, as being manifestly against public policy. The findings and judgment of the district court are fully sustained by the evidence. It is therefore recommended that the judgment of the district court be in all respects affirmed.

HASTINGS and DAY, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

NOTE.—*Marriage.—Divorce.—Law Favors the Former. Disfavors the Latter.—Public Policy.* It is the settled policy of the law to favor marriage, and to discourage divorce.

A marriage legal where solemnized, is valid everywhere.—*Hills v. State,* 61 Nebr., 589.

Where a party leaves the state of his domicile and resides temporarily in another state for the statutory period, merely for the purpose of obtaining a divorce, the marriage relation is not dissolved by the decree of the foreign court. *Dunham v. Dunham,* 57 Ill. App., 475, 500, affirmed in 162 Ill., 589, 614; *Beach v. Beach,* 4 Okla., 359, 399. A citizen of one state can not obtain a divorce in another state, which could not be obtained in the state of his or her domicile, where the removal was merely for the purpose of evading their own laws. *Hanover v. Turner,* 14 Mass. 227; *Brown v. Brown,* 14 N. J. Eq., 78.

*Quære*—Did the rule that the law favors marriage and discourages divorce originate in Christian morality? or was it a principle, transplanted from the civil law, which originated at the time Augustus taxed old bachelors, and paid bounties for babies because celibacy had become prevalent during the civil wars *contra publicam politiam?*

A note executed by a husband to his wife living separate from him to induce her to return, can not be enforced by the wife. *Copeland v. Boaz*, 40 Am. Rep. [Tenn.], 89. *Contra: Phillips v. Meyers*, 25 Am. Rep. [Ill.], 295.

The full faith and credit clause of the Federal Constitution, is not violated by the refusal of the Massachusetts courts, acting in accordance with Massachusetts Public Statutes, chapter 146, sec. 41, to give effect to a decree of divorce rendered by a court of another state in favor of one who temporarily left the state of Massachusetts, where he was domiciled, for the purpose of obtaining a divorce for a cause which occurred in that state while the parties resided there, but which was not a ground for divorce in that state. *Andrews v. Andrews*, 188 U. S., 14. Brewer, Shiras and Peckham, JJ,, dissenting.

The appearance of the non-resident defendant, can not invest a court with jurisdiction of a suit for divorce instituted by a person who has no bona-fide domicile within the state. *Andrews v. Andrews*, 188 U. S., 14. Brewer, Shiras and Peckham, JJ., dissenting.—RE-PORTER.