SHELLEY G. DAVIS, Plaintiff-Appellee, *v.* LAURA G. DAVIS, Defendant-Appellant.

(No. 57048;

First District—January 15, 1973.

*Rehearing denied February 15, 1973.*

Martin, Craig, Chester & Sonnenschein, of Chicago, (Charles G. Chester and Frana C. Biederman, of counsel,) for appellant.

Hoffman & Davis, of Chicago, (Maurice L. Davis and Alvin L. Kruse, of counsel,) for appellee.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

Shelley G. Davis filed a complaint for divorce in Cook County, Illinois from Laura G. Davis alleging various acts of mental cruelty. Service was had by publication on Laura, an out-of-state resident. Laura filed a special and limited appearance with supporting affidavits to contest the jurisdiction of the court. She moved to quash service and dismiss the complaint, based on lack of jurisdiction of her person. After a hearing, the court concluded that it had jurisdiction of the parties, and denied Laura's motion. The case went to trial. Laura did not file an answer and did not participate further in the proceedings. The court entered a decree of divorce, gave Laura custody of the parties' minor child with visitation rights to Shelley, denied alimony to either party, barred either party from participating in the property rights of the other, and set child support by the father at $125 per month. Laura, appealing, asserts that

Shelley did not meet the Illinois residency requirement, that her special appearance conferred only *in rem* jurisdiction on the court, and that she had a right to rely on the trial judge's statement that the power of the Illinois court was limited to *in rem* jurisdiction.

The facts are as follows. Shelley was born in Illinois. Some time around age eighteen he registered for the draft in Illinois. He lived with his parents at 616 N. Rush Street, Chicago, Illinois, from the time he was twelve years old. About four years prior to this suit his parents moved to 247 E. Chestnut, Chicago. Shelley changed his voting address and his draft board residence address to the new location, at which one bedroom was set aside for his use. He kept some of his possessions there. He attended his last year of high school, all of college and most of graduate school outside of Illinois. This period extended from 1954 until 1971, when he was awarded a doctorate in musicology by New York University. During his absence, he continued to vote from the Chicago address. In February 1971, after this suit was filed, a canvass of voters resulted in his name being stricken from the voting lists. Before the trial in this case, however, he had been reinstated as a registered voter. He has filed his Federal income tax returns in Chicago and has continued to receive some correspondence at his Chicago address.

Shelley was married to Laura on August 12, 1967 in New York State. About a month after their marriage the couple moved to an apartment building owned by Laura in New York City. The parties have one child born of their marriage.

Aside from employment in his father's law office in Chicago as a clerk during 1960 and 1961 while he was attending law school, Shelley's employment has been outside of Illinois. He taught at Emory University in Atlanta, Georgia, in 1962 and 1963. He was an instructor at New York University from 1966 until 1969, when he took off a year to write his doctoral dissertation. He began a full-time teaching job at the University of Maryland, College Park, Maryland, in September 1970, where he was employed at the commencement of this suit.

Shelley maintained a savings account at The First National Bank of Chicago from about 1960 until the present. While studying in New York, he had bank accounts both in his name and jointly with his wife. When he moved to Maryland, he opened a bank account there.

Shelley acquired a Maryland driver's license and bought a car which he registered in Maryland after he moved there. He applied for a country club membership in West Virginia, where his wife and child are now living. Shelley explained that the club would not give his wife a membership in her name, and he applied as an accommodation to her.

Shelley and Laura have never filed a joint Federal income tax return.

Shelley has filed New York and Maryland state income tax returns. There is some conflict in Shelley's testimony as to whether he has ever filed an Illinois state income tax return.

■■ Laura complains in this appeal that Shelley was not a resident of Illinois for the requisite one year prior to instituting suit for divorce. (Ill. Rev. Stat. 1969, ch. 40, par. 3.) The question that faces us is whether the evidence supports the finding that Shelley was in fact a resident of Illinois for the year prior to filing the complaint.

This is not the case of a nonresident entering the state solely to utilize the powers of this court for his purposes. We have here a man who was born and spent part of his life in Illinois. Our review of the decree turns on whether Shelley effectively abandoned his residence in this state. The finding on this issue is not contrary to the manifest weight of the evidence.

There is considerable evidence of Shelley's ties with other states over his lifetime, but there is also sufficient evidence of his intent to remain an Illinois citizen to support the finding of continued Illinois residence. Shelley continued to vote in Illinois while away at school and various jobs. The court considered the evidence of the striking of Shelley's name from the voting lists, his reinstatement as a voter and that he voted from his Chicago address in the December 1970 election. Shelley paid his Federal income taxes in Illinois. Correspondence, including that related to both his voting privilege and his Federal tax obligation, was directed to and received at his Chicago address. One such letter was a jury questionnaire, sent only to registered voters. Shelley returned it, explaining that it would be difficult to serve on a jury in Illinois because of his out-of-state employment. Shelley maintained a bank account in Illinois and did not move his possessions from his Chicago address to either his New York dwelling or his Maryland dwelling.

■■ Laura relies heavily on the case of *Way v. Way*, 64 Ill. 406, in support of her contention that Shelley was not an Illinois resident. That case, however, involved a transient who entered the state for the sole purpose of obtaining a divorce. The case before us is that of an Illinois resident who has been absent from the state. Affirmative acts of abandonment of the Illinois residence must be proved to sustain abandonment. Temporary absence, admittedly lengthy in this case, does not equate with abandonment. (*Cohn v. Cohn*, 327 Ill.App. 22, 63 N.E.2d 618.) The question of whether Shelley intended to abandon his residence in Illinois was for the trier of fact to answer. We will not disturb this finding unless it is against the manifest weight of the evidence. And we cannot say that the evidence purporting to show abandonment requires reversal, in light of Shelley's continued contacts with the State of Illinois.

■■ Laura's contention that Shelley admitted his lack of Illinois residency by stating in the complaint that the "marital residence" was in New York cannot be accepted. While subscribing to the rule cited by Laura as to the effect of a judicial admission, we cannot agree that this statement by Shelley constituted a judicial admission of nonresidence. Consider, for example, the case of a man and a woman who marry while attending school away from their respective states. The residence of neither is conclusively established by the act of marriage alone. Their residence (or residences) as in the case before us, must be determined on all the facts and circumstances of their existence as a married couple. Their marital residence is where they are living together.

Laura's next contention concerns the extent of the court's jurisdiction over her. She was properly served by publication as an out-of-state resident. (Ill. Rev. Stat. 1969, ch. 110, par. 14.) Shelley's Illinois residency for one year prior to the suit plus this service of Laura by publication could give the court only *in rem* jurisdiction; that is, jurisdiction of the marital status. Shelley concedes that, had Laura not appeared, the court could only have dissolved the marriage of the parties. The trial court determined that the special and limited appearance filed by Laura was converted to a general appearance, subjecting her to the personal jurisdiction of the court.

The Illinois statute must be the starting point for our examination of this finding. It provides:

"Special appearance:

(1) Prior to filing any other pleading or motion, a special appearance may be made either in person or by attorney for the purpose of objecting to the jurisdiction of the court over the person of the defendant. A special appearance may be made as to an entire proceeding or as to any cause of action involved therein. Every appearance, prior to judgment, not in compliance with the foregoing is a general appearance.

(2) If the reasons for objection are not apparent from the papers on file in the case, the special appearance shall be supported by affidavit setting forth the reasons. In ruling upon the objection, the court shall consider all matters apparent from the papers on file in the case, affidavits submitted by any party, and any evidence adduced upon disputed issues of fact. No determination of any issue of fact in connection with the objection is a determination of the merits of the case or any aspect thereof. A decision adverse to the objector does not preclude him from making any motion or defense which he might otherwise have made.

(3) If the court sustains the objection, an appropriate order

shall be entered. Error in ruling against the defendant on the objection is waived by the defendant's taking part in further proceedings in the case, unless the objection is on the ground that the defendant is not amenable to process issued by a court of this State." Ill. Rev. Stat. 1969, ch. 110, par. 20.

The issue before us, then, is whether Laura's special appearance went beyond a challenge of the court's jurisdiction of her person. If it did, it was converted to a general appearance and the court obtained *in personam* jurisdiction of Laura. As this court said in *Powers v. Powers,* 46 Ill.App.2d 57, 61, 196 N.E.2d 731, 733:

"The well-established rule in Illinois is that a defendant who makes a special appearance challenging jurisdiction of his person must limit the appearance to the jurisdictional question. If he invokes the court's power to adjudicate any defense or defenses in bar he is deemed to have submitted to the jurisdiction of the court."

■■ Laura's special appearance attacked the court's jurisdiction on four grounds: 1. that there was no personal service of summons on her, 2. that she has never been a resident of Illinois, 3. that Shelley is not and has not been within the past year (prior to instituting the suit) a resident of Illinois, and 4. that the parties have never maintained a marital domicile in Illinois. The first, second and fourth grounds alleged in the appearance are directed at the court's *in personam* jurisdiction of Laura. Illinois law provides that *in personam* jurisdiction may be obtained by personal service within the state, or by service on parties outside the state if they are Illinois residents or if they have maintained a marital domicile within the state. (Ill. Rev. Stat. 1969, ch. 110, pars. 13.2, 16 and 17.) Laura was not personally served with process, she is not an Illinois resident and the marital domicile has never been in Illinois. Indeed, Laura has been in Illinois only once, to appear specially at the hearing on jurisdiction, during which time she was immune from service. We find that Laura's allegation of these three grounds was appropriate to a special appearance challenging the jurisdiction of the court over her person. Hence, they cannot be said to have converted her special appearance to a general one.

■■ The remaining ground alleges that Shelley was not a resident of Illinois for the year prior to suit. We agree with Laura that this represents a challenge to the *in rem* jurisdiction of the court; that is, to its jurisdiction of the marital *res.* It has been held that where a cause of action can be divided into *in rem* and *in personam* actions, a party may appear specially to contest the *in rem* jurisdiction of the court if he chooses. (*Myers v. Myers,* 341 Ill.App. 406, 94 N.E.2d 100.) In this case, Shelley prayed for relief requiring *in rem* jurisdiction (divorce) and *in personam* jurisdiction (custody of the child.) Laura's special ap-

pearance challenged the court's jurisdiction either to enter a divorce decree or to enter *in personam* orders binding on her.

■■ The rule allowing a special appearance to challenge the *in rem* jurisdiction of the court follows logically from the fact that *in rem* jurisdiction is simply a limited form of jurisdiction of the person. A judgment in an *in rem* action is still a judgment against the person, but enforcement of the judgment is limited by the extent of the *res* before the court. *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565.

■■ Shelley argues that the supporting affidavits filed by Laura amounted to an allegation of the defense of condonation in the divorce action. If so, this would be an allegation going beyond the jurisdictional challenge and would convert the special appearance to a general one. Examining the affidavits, however, we do not find an allegation of condonation. The affidavits detail the activities and various places of residence of the parties, and, as such, they support Laura's challenge of Shelley's Illinois residency. The mere fact that the same information alleged in a challenge to jurisdiction would be necessary to support a defense on the merits is not enough to require us to hold that Laura's special appearance went beyond a jurisdictional challenge. Many cases may be cited where a special appearance was converted to a general one by the raising of some defense which goes to the merits. (See *Powers v. Powers*, 46 Ill.App.2d 57, 196 N.E.2d 731). The test remains whether the appearing party invoked the court's jurisdiction by raising such a defense. We conclude that the special appearance and supporting affidavits did not call for an exercise of the court's general jurisdiction.

■■ Shelley also contends that Laura's special appearance contained a challenge to the court's jurisdiction of the subject matter of the action. We cannot agree. Jurisdiction of the subject matter is the power of a particular court to hear the type of case that is then before it. (*Faris v. Faris*, 35 Ill.2d 305, 220 N.E.2d 210). True, the court's jurisdiction of Shelley in this case required an exercise of subject matter jurisdiction. The plaintiff's residence in a divorce case for the requisite period is necessary to confer on the court jurisdiction of his case. (*McFarlin v. McFarlin*, 384 Ill. 428, 51 N.E.2d 520.) But Laura's challenge to the jurisdiction of the marital *res* was not a challenge of the court's jurisdiction of Shelley's person; it was an attack on the court's jurisdiction of her status. As this court said many years ago: "The condition of marriage is a status, and therefore a thing; but the condition appertains to two, and exists in a status, wherever each is. Proceedings *in rem* dispose only of the *rem* within the jurisdiction of the court." (*Dunham v. Dunham*, 57 Ill.App. 475, 498, aff'd 162 Ill. 589, 44 N.E. 841.) We conclude that the special appearance was not converted to a general appearance.

■■■ Having decided that competent evidence supports the finding that Shelley was a resident of Illinois for the necessary one year prior to filing of the complaint and that Laura's special appearance did not confer personal jurisdiction on the trial court, we affirm the part of the decree granting the divorce but reverse as to the *in personam* findings and orders. It has long been held in Illinois that a decree treating alimony or child support is a decree *in personam*. (*Gleiser v. Gleiser*, 402 Ill. 343, 83 N.E.2d 693; *Jones v. Jones*, 40 Ill.App.2d 217, 189 N.E.2d 33.) The same reasoning requires reversal of any portions of the decree disposing of the property rights of Laura or Shelley.

Therefore the part of the decree awarding the divorce is affirmed and the part providing for the custody of their child, the payment of support money for the child and the release of property rights is reversed.

Decree affirmed in part and reversed in part.

ADESKO and EGAN, JJ., concur.