GABRIELLE ROSENSHINE, Plaintiff-Appellee, *v.* MARSHALL ROSENSHINE, Defendant-Appellant.

First District (2nd Division)   No. 76-1371

Opinion filed May 16, 1978.

Martin S. Gerber, of Chicago, for appellant.

Morris L. Simons, of Chicago, for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Plaintiff, Gabrielle Rosenshine, filed a complaint for divorce in Cook County, Illinois, against defendant, Marshall Rosenshine, on June 20, 1976. After a default judgment was entered against defendant, his

attorney filed a special appearance to contest the jurisdiction of the court. The default order was vacated and defendant's attorney filed a motion to dismiss the complaint for lack of the statutory residence requirement. Defendant alleged that the court had no jurisdiction because plaintiff had not been a resident of Illinois for one year immediately prior to filing the complaint. After plaintiff's deposition was taken and a hearing was held, the trial court denied the motion to dismiss. The court certified that the issues presented in the motion involved a question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal might materially advance the ultimate determination of litigation. This court allowed defendant's application for leave to appeal pursuant to Supreme Court Rule 308 (Ill. Rev Stat. 1975, ch. 110A, par. 308).

The sole issue on appeal is whether the trial court's finding that plaintiff was a resident of Illinois for one year preceding the filing of her complaint was against the manifest weight of the evidence.

The facts are established by plaintiff's deposition and her testimony at the hearing. Defendant appeared only by his attorney. Plaintiff was born in Chicago, Illinois, and grew up in Highland Park, Illinois. Defendant and plaintiff were married in Highland Park, Illinois, on June 26, 1959. They had four children, all of whom were born in Illinois.

The couple and their children resided in a house that they owned in Highland Park, Illinois, until 1970. At that time they went to Israel to see what business and living conditions would be like. Defendant and plaintiff purchased a home near Tel Aviv in which they lived until September 1974. From September 1974 to March 1975 when plaintiff returned to Illinois, the family lived in a leased house in Jerusalem. Both plaintiff and defendant signed a one-year lease for the house. During this time, defendant operated nine businesses in Israel.

When plaintiff and defendant moved to Israel, they rented the house in Highland Park, Illinois, for one or two years and then sold it to plaintiff's father. They took most of their furniture and personal belongings with them. Some books, clothes, mementoes and small items were left in the attic of the rented house, in a friend's garage and at both their parents' homes. While visiting Illinois in 1973, plaintiff purchased furniture and other household items and had them shipped to their home in Israel.

Plaintiff and defendant maintained a joint savings account and a joint checking account at the Northern Trust Bank in Chicago from 1965 to the present. Plaintiff had a savings account at the First National Bank of Highland Park until 1973 and a checking account at the Bank of Highland Park from 1965 to the present. She also maintained two charge accounts in Illinois since 1965. From 1965 to the present, the parties have kept a safe

deposit box at the Exchange National Bank in Chicago. The couple had an answering service in Illinois until 1973. The parties also maintained checking accounts at banks in Israel.

Plaintiff had employed three accountants and two attorneys in Illinois. She and the children had doctors in both Illinois and Israel, and they obtained medical care through the National Health Insurance program in Israel. Plaintiff maintained a temple affiliation in Illinois; she attended services when in Illinois but did not pay dues after 1971. She also had an interest in a building located in Chicago and owned some securities in Intercraft Industries Corporation which were held as collateral against loans by the First National Bank of Highland Park and her father.

Plaintiff had a driver's license in Israel and purchased a car there. She also signed several promissory notes in Israel. In 1974 plaintiff enrolled in a three-year program at the Tel Aviv University, but she attended only for one month.

Between 1970 and 1975 plaintiff made several trips to Illinois for both personal and business reasons. In the summers of 1971 and 1972 the family came to Illinois for vacation. In 1973 plaintiff made two visits for the purpose of taking care of business and financial problems and to purchase furnishings for their home in Israel. She made one visit in 1974 for the purpose of obtaining a loan on their house in Israel. In January 1975 plaintiff came to Illinois for about three weeks to join her husband. In March 1975 she and her children came to Illinois because defendant's father had died.

During the visits plaintiff stayed at various places, including her parents' home, the home of the defendant's parents, a friend's home and a hotel. She presently resides in her parents' home in Highland Park; however, she also maintains an apartment or an option on an apartment in Israel.

Plaintiff testified that when she came to Illinois in March of 1975, she left all of her major belongings in Israel, and she told several neighbors that she would be returning. She also testified that she always considered Illinois as her permanent home, and that it was always her intention to return to the United States. However, plaintiff stated also that she did not rule out the idea of permanently staying in Israel.

Plaintiff was continuously a citizen of the United States and maintained a United States passport, giving her address as Highland Park, Illinois. From 1970 to 1975 she was not registered to vote and did not vote in any election in either the United States or Israel. In 1973 plaintiff did apply to the Ministry of Interior in Israel for official status as a permanent foreign resident or a new immigrant. This status would have led to automatic citizenship of Israel. However, the application was never finalized.

Plantiff testified that she always had a mailing address in Illinois, which

was her parents' home or her attorney's office. She also stated that she maintained at all times living quarters at her parents' home, which consisted of a bedroom, a bath and a sitting room. She admitted, however, that when the family moved to Israel, they left no place which they could use as a home in Illinois.

Defendant contends on appeal that the trial court erred in finding that plaintiff was a resident of Illinois for one year prior to filing the complaint for divorce.

■■ ■ Section 2 of the Divorce Act requires that a party seeking a divorce be a resident of Illinois for one year prior to filing the complaint. (Ill. Rev. Stat. 1975, ch. 40, par. 3.) It is established that plaintiff's residence in a divorce case for the requisite period is necessary. *Farah v. Farah* (1st Dist. 1975), 25 Ill. App. 3d 481, 487, 323 N.E.2d 361; *Davis v. Davis* (1st Dist. 1973), 9 Ill. App. 3d 922, 929, 293 N.E.2d 399, *appeal denied* (1973), 53 Ill. 2d 607.

The term "residence" may have a variety of meanings depending upon the context in which it is used. (*Stein v. County Board of School Trustees* (1968), 40 Ill. 2d 477, 240 N.E.2d 668; *Garrison v. Garrison* (2d Dist. 1969), 107 Ill. App. 2d 311, 246 N.E.2d 9.) As used in the Divorce Act, "residence" is not synonymous with "domicile." (*Berlingieri v. Berlingieri* (1939), 372 Ill. 60, 61-62, 22 N.E.2d 675; *Garrison v. Garrison.*) The court in *Garrison* stated at page 314:

> "As used in the Divorce Act, 'residence' thus denotes 'permanent abode.' It is the place one considers as 'home.' Of paramount importance in determining whether a given place is or is not one's residence is the intent of that person to live there as his permanent home. [Citations.]" (107 Ill. App. 2d 311, 314.)

Intent is determined primarily from the acts of the person since acts and conduct may negate declarations of intent. (*Stein v. County Board of School Trustees; Fink v. Fink* (3d Dist. 1976), 37 Ill. App. 3d 604, 346 N.E.2d 415.) Whether a party has abandoned one residence in favor of another in a different jurisdiction is a question of fact. (*Green v. Green* (1st Dist. 1976), 41 Ill. App. 3d 154, 354 N.E.2d 661.) "Affirmative acts of abandonment of the Illinois residence must be proved to sustain abandonment." (*Davis v. Davis* (1st Dist. 1973), 9 Ill. App. 3d 922, 926.) Residence depends upon the facts and circumstances of each particular case (*Bateman v. Bateman* (4th Dist. 1949), 337 Ill. App. 7, 85 N.E.2d 196), and the finding of the trial court as to residence will not be disturbed unless it is against the manifest weight of the evidence. *Davis v. Davis; Cohn v. Cohn* (4th Dist. 1945), 327 Ill. App. 22, 63 N.E.2d 618.

The totality of plaintiff's actions demonstrates that she and her family abandoned residence in Illinois and established a permanent residence in

Israel. The parties purchased a home in Israel and transferred the major part of their belongings, leaving no place where they could live in Illinois. Defendant established himself in several businesses in Israel, and the children were enrolled in a Hebrew school. Plaintiff obtained a driver's license, purchased a car and enrolled in school for a short time. She and the children joined a National Health Insurance plan. Plaintiff's several visits to Illinois from 1970 to 1975 do not indicate an intent to maintain residence in Illinois. Such visits were either to see family members living in Illinois and to vacation or to enable the parties to remain in Israel by purchasing furnishings for their home and by obtaining financial assistance for their businesses in Israel. The fact that plaintiff applied for status as a permanent resident or as a new immigrant, which would lead to automatic citizenship of Israel, is evidence of an intent to remain in Israel permanently and to abandon residence in Illinois. Also, plaintiff told friends in Israel when she left in March 1975 that she would be returning. She admitted that their move to Israel was not only a visit and that they did not rule out the idea of permanently staying there.

■■ It is not disputed that when plaintiff initially moved to Israel in 1970 she did not immediately abandon her residence in Illinois. However, over the period from 1970 to 1975, sufficient action was taken by plaintiff in Israel to conclude that the manifest weight of evidence shows an intent to abandon residence in Illinois and to establish permanent residence in Israel. Therefore, we find that the trial court's decision was contrary to the manifest weight of the evidence. Accordingly, the order of the circuit court of Cook County denying defendant's motion to dismiss the complaint for lack of the statutory residence requirement is reversed.

Judgment reversed.

DOWNING and BROWN, JJ., concur.