In re MARRIAGE OF JAMES J. PASSIALES, Petitioner-Appellee, and CAROLYN A. PASSIALES, Respondent-Appellant.

First District (2nd Division)   No. 85—1294

Opinion filed May 13, 1986.—Rehearing denied June 24, 1986.

Cantwell & Fallace, of Chicago (Peter A. Cantwell, L. Yager Cantwell, Stephen F. Boulton, and Paul H. Scheuerlein, of counsel), for appellant.

Terry Sullivan, Ltd., of Rolling Meadows (Terry Sullivan and Nancy J. Nicol, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

Carolyn Passiales, the respondent in a divorce action, petitioned under section 72 of the Civil Practice Act, (Ill. Rev. Stat. 1973, ch. 110, par. 72 (now Ill. Rev. Stat. 1983, ch. 110, par. 2—1401)), to have her divorce decree set aside for lack of subject matter jurisdiction. In her petition, Carolyn also asked the court to find that the default judgment of divorce entered against her was void because the court lacked jurisdiction over her person. Finally, she requested leave to file an answer and a counterpetition for divorce against her husband.

The trial judge vacated Carolyn's divorce decree and dismissed the underlying cause of action for lack of subject matter jurisdiction. The judge made no finding as to whether the court granting the divorce had obtained personal jurisdiction over Carolyn, and he denied Carolyn leave to file a counterpetition for divorce. The judge also denied Carolyn's request that her husband, James, be sanctioned for untruthful statements and noncompliance with discovery orders, but he did award Carolyn $7,500 in attorney fees.

Carolyn now appeals from the trial court's orders, claiming, among other things, that her husband's petition for divorce should not have been dismissed when the divorce decree was vacated, that James should have been sanctioned for perjury, and that the court's award of attorney fees was inadequate. Carolyn's husband, James, has cross-appealed. He objects to the court's order vacating his divorce and awarding attorney fees to Carolyn.

James and Carolyn Passiales were married on August 24, 1969, at the home of Carolyn's parents in Esterville, Iowa. At the time of the marriage, Carolyn had been a lifelong resident of Iowa, and James was a student there. James and Carolyn lived in Des Moines, Iowa from 1969 until June 1971. In June 1971, the couple moved in with James' parents in Melrose Park, Illinois. They stayed in Melrose Park until August 1971, when James joined the air force. In August 1971, James and Carolyn moved to Biloxi, Mississippi. They lived in Biloxi until the early part of 1972, when James was transferred to Dover, Delaware. The couple remained in Dover until February 1973, when James was released from the air force and they returned to the home of James' parents in Melrose Park, Illinois.

Carolyn and James stayed with James' parents in Melrose Park from February until August 1973. During this time, the couple searched for a house or apartment of their own. They placed a down

payment on a rental unit in Lisle, Illinois, but before they could move into their apartment, James secured a position as an air traffic controller in Duluth, Minnesota.

In August 1973, the couple moved to Duluth. Carolyn left her husband in October 1974, and moved to her parents' home in Esterville, Iowa. James remained in Duluth until February 1975, when he was transferred to O'Hare Airport in Chicago. When James arrived in Illinois, he lived with his parents and stored his furniture in Duluth. In September 1976, James purchased a house in Bensenville, Illinois, and now lives in Wheaton, Illinois. Carolyn lives in California.

When Carolyn left James, she took some small household objects and a Ford Pinto automobile. According to Carolyn, James agreed to store the couple's china, silver, and crystal and two of Carolyn's rings until Carolyn was ready to take these items. On several occasions since 1974, Carolyn has asked James to surrender this property, but he has refused.

In April 1975, James and Carolyn agreed that James would sue for divorce in Illinois. James filed a petition for divorce in Cook County, Illinois, on May 25, 1975. On May 29, 1975, Carolyn was served with a summons by the local sheriff at her parents' home in Esterville, Iowa. James assured Carolyn that her appearance in court would be unnecessary. Carolyn was unrepresented by counsel and did not appear in the divorce action. On September 29, 1975, a default hearing was held, and on October 10, 1975, the circuit court entered a decree of divorce.

Carolyn was disturbed that James would not surrender the wedding gifts and rings that he had promised to keep for her. Consequently, on October 7, 1977, Carolyn filed a section 72 petition. (Ill. Rev. Stat. 1973, ch. 110, par. 72 (now Ill. Rev. Stat. 1983, ch. 110, par. 2—1401).) In her petition, she sought to vacate the 1975 divorce decree.

After Carolyn filed her section 72 petition, the parties commenced a stormy process of discovery. Each party accused the other of recalcitrance and purposefully obstructive conduct. The case was continued on numerous occasions, most of the time by agreement of the parties. Finally, on February 22, 1982, Judge Eiger, who had entered the original divorce decree, heard the arguments of both sides and declined to sanction either of the parties for failure to cooperate in discovery. He also denied Carolyn's petition for preliminary attorney fees, and he set the case for trial.

On August 31, 1982, Judge Eiger entered an order making the following findings with regard to Carolyn's section 72 petition: (1)

James had not been a resident of Illinois for one year prior to May 25, 1975, when he filed for divorce; (2) the court lacked subject matter jurisdiction to enter a judgment for divorce; (3) the divorce decree of October 10, 1975, was vacated and the cause dismissed. The foregoing order, although it was entered on August 31, 1982, was made *nunc pro tunc* to July 20, 1982. The order vacating the divorce was first entered on July 20, but it recited only that James was not an Illinois resident at the time he filed for divorce. On August 31, 1982, the judge changed the order to state that James was not an Illinois resident for one year prior to filing for divorce.

After Carolyn's section 72 petition was granted, both parties filed petitions for attorney fees. Carolyn also petitioned for a change of venue, claiming that she deserved a substitution of judges as a matter of right and that Judge Eiger was prejudiced against her. On April 18, 1983, Judge Eiger denied Carolyn's amended petition for change of venue. After a hearing on the parties' petitions for attorney fees, the judge entered an order on April 9, 1985, denying James' petition for fees and awarding Carolyn $7,500 in fees. The judge also noted in his order that the judgment against James would be stayed for 120 days, after which time, an interest rate of 7% would be levied on any unpaid balance.

Carolyn now appeals from the following on the trial court's orders: (1) order of February 22, 1982, in which Judge Eiger denied Carolyn preliminary attorney fees and declined to sanction James for noncompliance with discovery orders; (2) order of August 31, 1982, in which the judge dismissed James's 1975 suit for divorce; (3) order of February 2, 1983, in which the judge denied Carolyn's petition for a change of venue; (4) order of April 18, 1983, in which the judge denied Carolyn's amended petition for a change in venue; (5) order of April 9, 1985, in which Judge Eiger denied Carolyn's request for costs and attorney fees pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—611) and granted Carolyn only $7,500 in fees pursuant to section 508 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 508). Carolyn also objects to the part of this order in which the judge stayed judgment and levied 7% interest.

James has filed a cross-appeal, in which he objects to the following orders: (1) order of August 31, 1982, in which the judge vacated the divorce decree; (2) order of April 9, 1985, in which the judge denied James attorney fees but awarded them to Carolyn.

■ The first issue presented by this appeal is one raised by James. He contends that Carolyn should be estopped from challenging

the validity of the 1975 divorce decree because she remarried in reliance on it. James' argument has some merit, but it does not appear that Carolyn can be estopped from challenging the divorce.

A person who remarries in reliance on the validity of a prior divorce decree has accepted the benefit of that decree and is estopped from challenging its validity. (*In re Marriage of Paulius* (1985), 131 Ill. App. 3d 343, 345, 475 N.E.2d 1006.) This estoppel principle applies even when the divorce decree is attacked as being void for lack of subject matter jurisdiction. See *Forest v. Forest* (1973), 9 Ill. App. 3d 111, 114-15, 291 N.E.2d 880.

In the present case, Carolyn remarried on July 26, 1982. Her remarriage took place more than five years after she had filed a petition to vacate her divorce decree. In fact, she remarried five days after the court's initial order declaring her divorce null and void. (The court first vacated the divorce decree in an order dated July 20, 1982. This order contained an error, however, so the court issued a corrected order on August 31, 1982. The second order was *nunc pro tunc* to July 20, 1982.) Although Carolyn's conduct is puzzling, it is not covered by the principles of equitable estoppel. When Carolyn married her second husband on July 26, 1982, her divorce had been invalidated, and she was still married to James. Since Carolyn remarried after her divorce from James was vacated, she did not rely on the validity of her divorce decree. Moreover, she could not be estopped from challenging her divorce decree at a time when the decree had already been vacated.

■ The second issue presented on appeal is whether the court that entered the 1975 divorce had subject matter jurisdiction. James contends that the court had the necessary subject matter jurisdiction because he had been a resident of Illinois for one year prior to filing for divorce.

Section 2 of the divorce act operative in 1975 required that the party seeking a divorce be a resident of Illinois one year prior to filing his complaint. (Ill. Rev. Stat. 1973, ch. 40, par. 3.) The plaintiff's residence in a divorce case is necessary to confer subject matter jurisdiction on the court. (*Davis v. Davis* (1973), 9 Ill. App. 3d 922, 929, 293 N.E.2d 399.) The term "residence" as used in the divorce statute is not synonymous with domicile, but denotes a "permanent abode" or the place one considers as home. Of greatest significance in determining whether a place is one's residence is that person's intent to make the place his permanent home. *Rosenshine v. Rosenshine* (1978), 60 Ill. App. 3d 514, 517, 377 N.E.2d 132.

Judge Eiger's finding on whether James fulfilled the residency re-

quirement cannot be overturned unless it is against the manifest weight of the evidence. (*Rosenshine v. Rosenshine* (1978), 60 Ill. App. 3d 514, 517, 377 N.E.2d 132.) A review of the evidence in this case finds only scant support of James' assertion that he was an Illinois resident for one year prior to filing for divorce on May 25, 1975. James grew up in Illinois and returned to Illinois after his release from the air force in 1973. He moved to Minnesota in September 1973 because he obtained a job as an air traffic controller in Duluth. James testified that he considered this a temporary assignment until he could be transferred to O'Hare Airport in Chicago. He said that he requested such a transfer and received it in February 1975, when he moved back to Illinois.

Despite the fact that James said that he considered Illinois his home, his course of conduct indicates that he was a resident of Minnesota during the time period in question. Intent is determined primarily from a person's acts, and conduct may negate declarations of intent. (*Rosenshine v. Rosenshine* (1978), 60 Ill. App. 3d 514, 517, 377 N.E.2d 132.) James transferred a life insurance policy from Delaware to Minnesota. He closed his Illinois bank accounts and established new ones in Minnesota. Although he apparently left some wedding gifts at his parents' home in Melrose Park, he kept the rest of his belongings in Minnesota.

James filed his 1974 tax returns from Minnesota, and on his state tax return, he declared himself a year-round Minnesota resident. In addition, on his 1975 Illinois tax return, he indicated that he had been an Illinois resident for only part of the year. Although James said that he thought of his tour of duty in Duluth as temporary, nothing in the record suggests that he was assured of a transfer to Chicago, and James admitted that he might never have been transferred to O'Hare. It is true that James retained an Illinois driver's license while he lived in Duluth, but the remainder of his conduct indicates an intent to abandon Illinois residency in favor of residency in Minnesota. This being the case, it was not against the manifest weight of the evidence for the trial court to find that James had not fulfilled the residency requirement when he filed for divorce.

The third issue posed by this appeal is one raised by Carolyn. She claims that the trial court erred in dismissing James' suit for divorce at the same time that it vacated the judgment of divorce. Carolyn contends that in the context of a section 72 petition, the court is empowered only to vacate the judgment and not to dismiss the underlying cause of action.

Carolyn's argument is unpersuasive. A section 72 petition is ad-

dressed to the sound discretion of the trial court, and a reviewing court is justified in disturbing it only when there has been an abuse of discretion. (*Beverly Bank v. Pentagon Investment Co.* (1981), 100 Ill. App. 3d 1074, 427 N.E.2d 835.) The trial judge in this case did not abuse his discretion by dismissing James' complaint. It is true that a section 72 petition commences a new proceeding and is not a continuation of the original action. (*Steinberg's Department Store, Inc. v. Baysinger* (1980), 86 Ill. App. 3d 1140, 1145, 409 N.E.2d 8.) In some cases, therefore, it may be unnecessary or improper to dismiss the cause of action when a judgment is vacated. However, the judgment in the present case was vacated for lack of subject matter jurisdiction. When a court lacks subject matter jurisdiction, the only thing it has power to do is dismiss the cause of action. (*Glasco Electric Co. v. Department of Revenue* (1980), 87 Ill. App. 3d 1070, 1073, 409 N.E.2d 511.) Since James' 1975 divorce complaint was unsupported by subject matter jurisdiction, the court acted properly in dismissing it.

■ The fourth issue posed by this case is whether the court that entered the 1975 divorce decree had personal jurisdiction over Carolyn. Carolyn asserts that service of process on her was defective because the sheriff did not file a return affidavit. She argues further that Judge Eiger should have entered a finding to that effect when he vacated the divorce decree.

Carolyn's argument lacks merit. Service of process in the divorce action was not fatally defective. The statute in operation in 1975 required that nonresidents be served with summons in the same manner as service is conducted in the State. Furthermore, "[a]n affidavit of the server shall be filed stating the time, manner and place of service. The court may consider the affidavit, or any other competent proofs, in determining whether service has been properly made." Ill. Rev. Stat. 1973, ch. 110, par. 16 (now Ill. Rev. Stat. 1983, ch. 110, par. 2—608).

It is true that service on a nonresident must comply with the statutory requirements. (*Wells v. Braxton* (1967), 82 Ill. App. 2d 354, 363, 227 N.E.2d 137.) However, failure to adhere to the affidavit requirement does not necessarily render the service void. (*Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 481, 430 N.E.2d 1104.) In the present case, although the sheriff in Iowa did not file a return affidavit, there was competent proof that Carolyn was properly served with a summons. The sheriff testified that he personally served Carolyn, and she admitted that she was served. In view of the facts, service was effective despite the lack of a return affidavit.

■ Furthermore, Carolyn is incorrect when she says that her di-

vorce decree is void for lack of personal jurisdiction. Divorce is a *quasi in rem* proceeding. The only portions of a divorce action requiring personal jurisdiction over a defendant are those orders which grant custody of a child, dispose of property, or compel a defendant to pay support. (See *Davis v. Davis* (1973), 9 Ill. App. 3d 922, 928, 930, 293 N.E.2d 399.) Since personal jurisdiction is not required to dissolve a party's marriage, the validity of Carolyn's divorce is unaffected by the issue of whether the court had jurisdiction over her.

■ The fifth issue presented for review is another one raised by Carolyn. She claims that the court erred in denying her petition for change of venue. After Carolyn's section 72 petition had been granted by Judge Eiger, she petitioned for attorney fees and for a change of venue. She contends on appeal that she deserved a change of venue as a matter of right because Judge Eiger had not yet ruled on a substantive issue in the case. In the alternative, she claims that Judge Eiger was prejudiced against her, entitling her to a change of venue for cause.

Again, Carolyn's argument is unpersuasive. It is true, as Carolyn observes, that the right to a change of venue is absolute if a request is filed before the judge has ruled on any substantive issue. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1001.) Once the judge has ruled, however, change of venue is a matter of judicial discretion, and the petitioner must state specific instances of prejudice. The rationale for allowing a change of venue as a matter of right is that a litigant is entitled to an impartial hearing. The correlative rationale for limiting the right to situations in which the judge has not yet ruled on an issue is that a party should not be free to "judge shop" until he finds a jurist who is favorably disposed to his cause of action. *In re Marriage of Zannis* (1983), 114 Ill. App. 3d 1034, 1038, 449 N.E.2d 892.

In the present case, Judge Eiger had already ruled on the 1975 petition for divorce, and he had granted Carolyn's section 72 petition. Consequently, Carolyn was not entitled to a change of venue as a matter of right. (Carolyn also alleged specific instances of Judge Eiger's prejudice, but these were simply occasions on which Judge Eiger refused to rule in her favor. Carolyn falls far short of showing that she deserved a change of venue because of prejudice.) Carolyn claims that her petition for attorney fees was a new proceeding distinct from her petition for post-judgment relief. Our supreme court has held, however, that a post-decree petition does not constitute a new action for purposes of the venue statute. A substantive ruling on one petition precludes a change of venue as a matter of right for a hearing on another petition. If a litigant were allowed a change of venue every

time he submitted separate but related petitions, then the statutory prohibition against more than one change of venue would be rendered meaningless. *In re Marriage of Kozloff* (1984), 101 Ill. 2d 526, 531, 463 N.E.2d 719.

In view of the holding in *Kozloff*, it is clear that Carolyn's petition for attorney fees was merely a continuation of her section 72 petition. Moreover, to allow a change of venue under the circumstances of this case would encourage the kind of "judge shopping" forbidden by the venue statute and decried by the court in *Kozloff*. Since Judge Eiger had denied Carolyn's preliminary request for attorney fees, she knew that he might be unfavorably inclined toward her second request for costs and fees. Carolyn had a fair hearing before Judge Eiger, however, and she had no right to seek a jurist more kindly disposed to her cause.

■ The sixth issue posed by this appeal is whether James should have been sanctioned under section 2—611 of the Code of Civil Procedure for what Carolyn claims were untrue statements made to the court. This argument, like Carolyn's request that James receive a contempt citation, is unpersuasive.

Section 2—611 of the Code of Civil Procedure provides the following: "Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court upon a motion made within 30 days of judgment or dismissal." (Ill. Rev. Stat. 1983, ch. 110, par. 2—611.) The purpose of section 2—611 is to prevent abuse of the judicial process by sanctioning a party who brings vexatious litigation predicated upon false statements. As a penal statute, this section may be invoked only in cases that fall strictly within its terms. The movant has the burden of proving not only that the allegations were false, but that they were made without reasonable cause. *People ex rel. Donnelson v. Cowling* (1984), 128 Ill. App. 3d 886, 889, 471 N.E.2d 654.

Carolyn has failed to meet her burden of proof under section 2—611. She has not shown that James made a false allegation about his Illinois residency without reasonable cause. James related circumstances that he thought gave him reason to believe that he was an Illinois resident. Such conduct does not warrant sanctions under section 2—611.

■ The seventh issue presented for review concerns the court's award of $7,500 in attorney fees to Carolyn. Carolyn argues that this award is inadequate, and James contends that Carolyn was not enti-

tled to fees under the standard set forth in section 508 of the Illinois Marriage and Dissolution of Marriage Act.

Both parties are unpersuasive. Section 508 of the Illinois Marriage and Dissolution of Marriage Act provides that a court, "after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney fees and for the costs and attorney fees necessarily incurred by the other spouse." (Ill. Rev. Stat. 1983, ch. 40, par. 508.) The allowance of attorney fees in a divorce action rests with the sound discretion of the trial court, and the court's judgment will be disturbed on review only if there has been a clear abuse of discretion. (*Van Fleet v. Van Fleet* (1977), 50 Ill. App. 3d 172, 174, 365 N.E.2d 1143.) When the financial circumstances of both parties are substantially similar, an award of attorney fees may be an abuse of discretion. However, a party who must use the judicial process to enforce his rights because of some action by his opponent is entitled to fees even absent a showing of an inability to pay. *In re Marriage of Moriarity* (1985), 132 Ill. App. 3d 895, 900, 478 N.E.2d 537.

In the case at bar, the judge exercised sound discretion in awarding Carolyn $7,500 in attorney fees, even though she asked for a significantly greater amount. The financial abilities of James and Carolyn are substantially similar. Neither party is affluent. Carolyn testified that she earns less than $2,500 per year as a decorator, but she has an interest in some real property, and apparently has some of her needs met by her putative spouse since she could not survive on the amount she claims as income. James earns only $7.25 per hour since he lost his job as an air traffic controller during a strike. However, he was able to sell his interest in a tavern for $13,000.

Because the parties' financial abilities are substantially similar, and since James has fallen on economic hard times, the court acted properly in reducing Carolyn's fees to $7,500. However, in view of the fact that Carolyn had to call upon the legal system to attack a divorce secured by James, the trial judge did not abuse his discretion in awarding some fees to Carolyn.

■■■ The eighth issue presented for review is raised by Carolyn. She claims that the trial court erred in staying the judgment for 120 days and levying a 7% interest rate upon any unpaid portion of the judgment.

Carolyn's contention has merit. Under section 2—1303 of the Code of Civil Procedure, "[j]udgments recovered [before] any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied ***'' (Ill. Rev. Stat. 1983, ch. 110, par. 2—

1303.) The language of this statute is positive and self-executing. A court is without authority to limit the accrual of interest imposed by statute. (*People ex rel. Holland v. Halprin* (1975), 30 Ill. App. 3d 254, 256, 332 N.E.2d 501.) Moreover, the judgment creditor is allowed interest from the date of judgment even when an appeal is pending. *First National Bank & Trust Co. v. Aluminum Coal Anodizing Corp.* (1980), 86 Ill. App. 3d 842, 844, 408 N.E.2d 477.

In view of the fact that the trial judge had no authority to alter the statutory accrual of interest on a judgment, the court erred in staying the judgment and imposing a 7% interest rate. The interest rate should have been 9%, effective from the date of judgment.

▆▆ The ninth and final issue presented for review concerns some evidence that Carolyn attempted to present during the hearing on attorney fees. Carolyn claims that the court erred when it refused to allow her to make an offer of proof and declined to admit evidence that James rejected a reasonable settlement offer. According to Carolyn, James's rejection of a settlement offer is indicative of his obstructive behavior and is relevant to her entitlement to attorney fees.

Carolyn's argument lacks merit. The court did not err in refusing to allow Carolyn to make an offer of proof. Where an offer of proof is necessary, it is error for the trial judge to refuse counsel's request to make one. (*Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 166, 356 N.E.2d 164.) However, an offer of proof is unnecessary when the nature of the evidence is obvious. (*Allen & Korkowski & Associates v. Pettit* (1982), 108 Ill. App. 3d 384, 388, 439 N.E.2d 102.) In this case, it was clear to the trial court that Carolyn wished to introduce evidence that James repudiated a settlement agreement. Consequently, there was no need for an offer of proof.

▆▆ Furthermore, the court did not abuse its discretion in refusing to admit Carolyn's evidence. Matters relating to offers of settlement or compromise are ordinarily inadmissible, but admission of other facts elicited incidentally during settlement discussions may be introduced as evidence. (*Sawicki v. Kim* (1983), 112 Ill. App. 3d 641, 644, 445 N.E.2d 63.) The evidence Carolyn sought to introduce in this case was not an incidental fact elicited during settlement talks. Rather, Carolyn wanted to establish the fact that James refused to go along with a proposed settlement. Such evidence is inadmissible because it is a matter relating to an offer of compromise or negotiation.

Carolyn notes that matters relating to settlement are excluded because a jury is likely to construe such evidence as an admission of liability. According to Carolyn, settlement matters are admissible when they are introduced in connection with something other than the issue

of a party's liability. She contends further that James' repudiation of a settlement agreement was admissible to show that he is responsible for her attorney fees.

It is true that one reason for excluding settlement matters is that they might be construed as admissions of liability. (*Smiley v. Manchester Insurance & Indemnity Co.* (1977), 49 Ill. App. 3d 675, 681, 364 N.E.2d 683.) However, that is not the only consideration underlying this rule of exclusion. Another reason for excluding matters relating to settlement is that " 'public policy favors such compromises and in that light they should be considered inadmissible.' " (49 Ill. App. 3d 675, 681, 364 N.E.2d 683, citing *Hill v. Hiles* (1941), 309 Ill. App. 321, 32 N.E.2d 933.) If a party's rejection of a settlement offer or repudiation of a settlement agreement were admissible on the issue of attorney fees, then the negotiation process would be hampered. During any negotiation, there must be give and take, and the parties must be free to exchange proposals and counter-proposals without the fear that they will be liable for their opponent's attorney fees if they decide to reject an offer of settlement.

Not only is James's conduct during negotiations inadmissible because of public policy, but such evidence is irrelevant to the issue of whether James is liable for Carolyn's attorney fees. A person's decision to take a case to trial is simply a matter of judgment. The failure to reach a settlement does not mandate, in and of itself, that a litigant must pay his opponent's fees, nor does it justify the amount of a fee award. (*Bellow v. Bellow* (1981), 94 Ill. App. 3d 361, 371, 419 N.E.2d 924.) Moreover, the decision to reject a settlement agreement is not misconduct warranting an award of attorney fees under section 2—611 of the Code of Civil Procedure. Ill. Rev. Stat. 1983, ch. 110, par. 2—611.

In light of the foregoing, the judgment of the trial court is affirmed on each issue raised by the parties except the issue of interest on the judgment. On that issue, the judgment of the circuit court is vacated and the cause is remanded for proceedings consistent with this opinion.

*Affirmed in part and vacated in part and remanded.*

HARTMAN and SCARIANO, JJ., concur.