CHERYL BREZINSKY, Plaintiff-Appellant, v. JAMES R. CHERVINKO, Defendant-Appellee.

First District (5th Division)   No. 1—87—3160

Opinion filed December 8, 1989.

Schiller, DuCanto & Fleck, Ltd., of Chicago (David B. Yavitz and Sarane C. Siewerth, of counsel), for appellant.

Paul M. Brayman, of Law Office of Paul M. Brayman, of Chicago, for appellee.

JUSTICE COCCIA delivered the opinion of the court:

Plaintiff Cheryl M. Brezinsky appeals from an order entered by the circuit court, dismissing her petition for attorney fees. She expended the fees in defending defendant James R. Chervinko's appeal from a paternity judgment in her favor. The petition was brought under section 17 of the Illinois Parentage Act of 1984 (Ill. Rev. Stat. 1985, ch. 40, par. 2517), as well as section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—611). We affirm for the following reasons.

Brezinsky commenced her paternity action, out of which this appeal arises, on November 18, 1985. She claimed that Chervinko was the father of her son. Chervinko denied that he had sexual intercourse with Brezinsky during the time her son was conceived. Chervinko admitted, however, that he signed a "Consent to Adoption of Unborn Child" form on June 25, 1985, as a favor to her. At a hearing held the same day, Chervinko admitted in court that he fathered Brezinsky's son. On December 5, 1985, Brezinsky moved for summary judgment upon the paternity issue, relying on Chervinko's admissions. The circuit court granted her motion on February 14, 1986, and Chervinko appealed. The circuit court's ruling was affirmed in a Rule 23 order (107 Ill. 2d R. 23) issued on November 26, 1986. This court held that the circuit court did not err in entering summary judgment against Chervinko on the paternity issue, reasoning that he was bound by his admissions in the consent form and the June 25, 1985, hearing.

The present action for attorney fees was commenced on December 24, 1986. As noted above, recovery was sought under section 17 of the Parentage Act, which provided:

"Costs. Except as otherwise provided in this Act, the court may order reasonable fees of counsel, experts, and other costs of the action and pre-trial proceedings to be paid by the parties in proportions and at times determined by the court." Ill. Rev. Stat. 1985, ch. 40, par. 2517.

Recovery was likewise sought pursuant to section 2—611 of the Code of Civil Procedure, which stated:

"Untrue Statements. Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily

taxed by the court upon motion made within 30 days of the judgment or dismissal." (Ill. Rev. Stat. 1985, ch. 110, par. 2—611.)

Regarding section 2—611, Brezinsky averred, the circuit court found Chervinko's defense to be untrue, and that finding was affirmed on appeal. Thus, his denial of paternity was without reasonable cause, contrary to section 2—611. Fees in excess of $6,000 were sought.

In response, Chervinko argued that the General Assembly did not intend that attorney fees be recoverable for defending appeals from paternity judgments, because such fees were not specifically mentioned in section 17 of the Parentage Act. Concerning section 2—611 of the Code of Civil Procedure, Chervinko contended that even if his denial of paternity was untrue, it did not follow that he knew it to be untrue. This was in keeping with his theory that he executed the consent form as a favor to Brezinsky, rather than as an admission of paternity.

A hearing was held on the petition for attorney fees on April 4, 1987, and the circuit court denied it. The circuit court ruled that it had no jurisdiction under section 17 to award attorney fees for defending Chervinko's appeal of Brezinsky's paternity judgment, and that there was no evidence as to any unreasonable pleading by him in violation of section 2—611. She then moved to reconsider, but the circuit court denied her motion on September 25, 1987. Subsequently, Brezinsky perfected this appeal. The parties waived oral argument, so we have decided this case on the briefs.

## I

■ Illinois courts generally construe fee-shifting provisions, like section 17 of the Parentage Act, strictly. (See *Saskill v. 4-B Acceptance* (1985), 139 Ill. App. 3d 143, 145, 487 N.E.2d 97, 99.) Under the "American Rule," the losing litigant is not obliged to pay the prevailing litigant's fees; consequently, fee-shifting provisions are in derogation of the common law. (*Saskill*, 139 Ill. App. 3d at 144-45, 487 N.E.2d at 98.) In *Saskill*, the appellate court refused to reverse the circuit court's denial of plaintiff's appellate attorney fees. She sought fees under the Interest Act (Ill. Rev. Stat. 1983, ch. 17, par. 6413). The appellate court concluded that since the legislature had not provided specifically for appellate attorney fees in the Interest Act, as it had in other statutes, plaintiff was not entitled to them. *Saskill*, 139 Ill. App. 3d at 144-45, 487 N.E.2d at 98-99.

Indeed, the General Assembly has specifically provided for appellate attorney fees in other domestic relations legislation. As the cir-

cuit court observed below, section 508(a)(3) of the Illinois Marriage and Dissolution of Marriage Act permits recovery of attorney fees for the defense of an appeal:

"Attorney's Fees. (a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse, which award shall be made in connection with the following:

\* \* \*

(3) The defense of an appeal of any order or judgment under this Act, including the defense of appeals of post-judgment orders." Ill. Rev. Stat. 1985, ch. 40, par. 508(a)(3) (amended by Pub. Act 85–357, §1, eff. Jan. 1, 1988).

■ In light of the foregoing, we are compelled to hold that the circuit court did not err in ruling that Brezinsky was not entitled to attorney fees, for defending Chervinko's appeal of her paternity judgment, under section 17 of the Parentage Act. As section 17 is a fee-shifting provision, it must be construed strictly. Moreover, section 17, unlike section 508(a)(3) of the Dissolution Act, does not specifically allow recovery of attorney fees for defending appeals. The fact that the legislature specifically authorized recovery of appellate attorney fees in section 508(a)(3) suggests that it did not intend that such fees be recoverable in section 17, as the latter section, in contrast to the former section, is silent on this particular subject.

Section 17 of the Parentage Act is based upon section 16 of the Uniform Parentage Act. (9B U.L.A. 328 (1987).) Brezinsky has cited three cases from other jurisdictions that have adopted versions of section 16, in support of her claim that she is entitled to attorney fees for defending Chervinko's appeal: *D.P. v. Stewart* (1987), 189 Cal. App. 3d 244, 234 Cal. Rptr. 420; *In re Petition of Miller* (Minn. App. 1987), 409 N.W.2d 11; and *Lake v. Butcher* (1984), 37 Wash. App. 228, 679 P.2d 409. She also relies upon *People ex rel. Perz v. Schneemilch* (1967), 82 Ill. App. 2d 371, 227 N.E.2d 132, which was decided under section 9 of the Paternity Act (Ill. Rev. Stat. 1965, ch. 106¾, par. 59), which has been replaced by the Parentage Act. It appears that none of the parties ordered to pay appellate attorney fees in these four cases questioned the courts' authority to award them. It cannot be argued, consequently, that the propriety of such fees was at issue in the four cases. Here, by way of contrast, Chervinko successfully challenged the circuit court's power to award appellate attorney fees.

Thus, Brezinsky's authorities are not analogous to this case, for they assume the propriety of granting appellate attorney fees.

In addition, Brezinsky argues, the meaning of the word "action" in section 17, quoted above, is broad enough to include appeals; therefore, she concludes, the attorney fees expended in defending her paternity judgment against Chervinko are recoverable. But the General Assembly did not believe that the meaning of the word "action" was broad enough to include "pre-trial proceedings," for it was moved to explicitly identify such proceedings in order to bring them within the purview of section 17. How can it be said, then, that the meaning of the word "action" is broad enough to include appeals, yet not broad enough to include "pre-trial proceedings?" Furthermore, it is worth noting that the legislature has recently amended section 17, which now provides:

> "Costs. Except as otherwise provided in this Act, the court may order reasonable fees of counsel, experts, and other costs of the action, pre-trial proceedings and post-judgment proceedings to enforce or modify the judgment to be paid by the parties in accordance with the relevant factors specified in Section 508 of the Illinois Marriage and Dissolution of Marriage Act, as amended." (Pub. Act 85—1417, §3, eff. Jan. 1, 1989.)

In amending section 17 the legislature apparently meant to replace the method of determining fees set forth in the original version of section 17—"in proportions and at times determined by the court"—with the more detailed criteria set forth in section 508. But the reference to section 508 in the amended version of section 17 gives rise to the inference that the General Assembly knew that appellate attorney fees were recoverable under the Dissolution Act, and that it again declined to make those fees recoverable under the Parentage Act. Accordingly, when the legislature clearly had another opportunity to include fees for defending appeals in section 17, it did not do so.

Finally, Brezinsky urges as a matter of policy that Illinois courts must eliminate the possibility that, due to financial hardship, a party might be foreclosed from securing adequate representation to defend a paternity judgment on appeal. To support this proposition, she cites *In re Marriage of Wentink* (1984), 132 Ill. App. 3d 71, 476 N.E.2d 1109, and *In re Marriage of McBride* (1981), 102 Ill. App. 3d 84, 429 N.E.2d 867. However, both cases were decided under section 508 of the Dissolution Act, which explicitly contemplates the recovery of attorney fees for the defense of appeals. Presumably, we reiterate, the General Assembly would have specifically authorized the recovery of such fees in section 17 of the Parentage Act, had it seen fit to do so.

In the event that the legislature inadvertently omitted fees for defending appeals from the Parentage Act, perhaps our opinion will call attention to this discrepancy.

## II

■ The version of section 2—611 in effect when Chervinko made the denials for which Brezinsky sought sanctions is quoted above. The purpose of that section was to prevent abuse of the judicial process by sanctioning parties who engaged in vexatious litigation predicated upon false statements. (*In re Marriage of Passiales* (1986), 144 Ill. App. 3d 629, 638, 494 N.E.2d 541, 549.) As section 2—611 was a penal statute, it could only be invoked in cases that fell strictly within its terms. The movant had the burden of proving not only that the allegations were false, but also that they were made without reasonable cause. (*Passiales*, 144 Ill. App. 3d at 638, 494 N.E.2d at 549.) Under section 2—611, it was not an abuse of discretion for a circuit court to refuse to impose sanctions when a party made untrue statements, as long as that party did not know they were untrue. See *In re Petition of Sullivan* (1985), 134 Ill. App. 3d 455, 465-67, 480 N.E.2d 1283, 1291-93.

In our case, the circuit court followed *Sullivan*, concluding that even if Chervinko's denial of paternity was untrue, he did not necessarily know it to be untrue. It is noteworthy that the same circuit court judge presided over both Brezinsky's paternity action and her subsequent action for attorney fees. In the paternity action, the judge recalled, Brezinsky never proved that she and Chervinko had sexual intercourse at the time her boy was conceived, as he denied. Instead, according to the judge, she was awarded summary judgment on the basis of Chervinko's admissions, which he never denied making, in the consent form and at the consent hearing. Chervinko claimed in the paternity action that his admissions in the consent proceedings, the purpose of which was not to establish paternity but rather to facilitate adoption, were made as a favor to Brezinsky. In our Rule 23 order, as noted above, we held only that Chervinko was bound by his admissions. It does not follow, then, that Chervinko's denial of paternity was false and made without reasonable cause. This being the case, Brezinsky did not meet her burden under 2—611, and the circuit court did not abuse its discretion by refusing to sanction Chervinko.

■ Brezinsky likewise claims that she is entitled to attorney fees under the amended version of section 2—611. (Pub. Act 84—1431, art. 2, §1, eff. Nov. 25, 1986.) But in the circuit court, Brezinsky did not argue that she was entitled to fees under the amended version. This

court has previously stated that if parties do not raise theories below, they cannot raise them for the first time on appeal. (See *Burys v. First Bank* (1989), 187 Ill. App. 3d 384, 387, 543 N.E.2d 253, 255.) We therefore conclude that Brezinsky has waived the claim that she is entitled to attorney fees under the amended version of section 2—611.

For the stated reasons the circuit court's judgment, dismissing the petition for attorney fees incurred in defending Chervinko's appeal of Brezinsky's paternity judgment, is affirmed.

Affirmed.

MURRAY, P.J., and LORENZ, J., concur.